LUGAR *v.* EDMONDSON OIL CO., INC., ET AL.

No. 80–1730.  Argued December 8, 1981—Decided June 25, 1982

WHITE, J., delivered the opinion of the Court, in which BRENNAN, MAR-
SHALL, BLACKMUN, and STEVENS, JJ., joined.  BURGER, C. J., filed a dis-
senting opinion, *post*, p. 943.  POWELL, J., filed a dissenting opinion, in
which REHNQUIST and O'CONNOR, JJ., joined, *post*, p. 944.

*Robert L. Morrison, Jr.,* argued the cause and filed a brief
for petitioner.

*James W. Haskins* argued the cause for respondents.
With him on the brief was *H. Victor Millner, Jr.*

JUSTICE WHITE delivered the opinion of the Court.

The Fourteenth Amendment of the Constitution provides
in part:

"No State shall make or enforce any law which shall
abridge the privileges or immunities of citizens of the

United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Because the Amendment is directed at the States, it can be violated only by conduct that may be fairly characterized as "state action."

Title 42 U. S. C. § 1983 provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . ."[1] This case concerns the relationship between the § 1983 requirement of action under color of state law and the Fourteenth Amendment requirement of state action.

## I

In 1977, petitioner, a lessee-operator of a truckstop in Virginia, was indebted to his supplier, Edmondson Oil Co., Inc. Edmondson sued on the debt in Virginia state court. Ancillary to that action and pursuant to state law, Edmondson sought prejudgment attachment of certain of petitioner's property. Va. Code § 8.01–533 (1977).[2] The prejudgment attachment procedure required only that Edmondson allege, in an *ex parte* petition, a belief that petitioner was disposing of or might dispose of his property in order to defeat his creditors. Acting upon that petition, a Clerk of the state court issued a writ of attachment, which was then executed by the County Sheriff. This effectively sequestered petitioner's

---

[1] Title 42 U. S. C. § 1983, at the time in question, provided in full:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

[2] At the time of the attachment in question, this section was codified as Va. Code § 8–519 (1973).

property, although it was left in his possession. Pursuant to the statute, a hearing on the propriety of the attachment and levy was later conducted. Thirty-four days after the levy, a state trial judge ordered the attachment dismissed because Edmondson had failed to establish the statutory grounds for attachment alleged in the petition.[3]

Petitioner subsequently brought this action under 42 U. S. C. § 1983 against Edmondson and its president. His complaint alleged that in attaching his property respondents had acted jointly with the State to deprive him of his property without due process of law. The lower courts construed the complaint as alleging a due process violation both from a misuse of the Virginia procedure and from the statutory procedure itself.[4] He sought compensatory and punitive damages for specified financial loss allegedly caused by the improvident attachment.

Relying on *Flagg Brothers, Inc.* v. *Brooks,* 436 U. S. 149 (1978), the District Court held that the alleged actions of the respondents did not constitute state action as required by the Fourteenth Amendment and that the complaint therefore did not state a claim upon which relief could be granted under § 1983. Petitioner appealed; the Court of Appeals for the Fourth Circuit, sitting en banc, affirmed, with three dissenters.[5] 639 F. 2d 1058 (1981).

---

[3] The principal action then proceeded to the entry of judgment on the debt in favor of Edmondson and some of petitioner's property was sold in execution of the judgment.

[4] In his answer to respondents' motion to dismiss on abstention grounds petitioner stated that "[n]o question of the constitutional validity of the State statutes is made." Plaintiff's Memorandum in Opposition to Motion to Dismiss 3. The District Court responded to this as follows: "[D]espite plaintiff's protests to the contrary . . . the complaint can only be read as challenging the constitutionality of Virginia's attachment statute." App. to Pet. for Cert. 38. The Court of Appeals agreed. 639 F. 2d 1058, 1060, n. 1 (CA4 1981).

[5] The case was originally argued before a three-judge panel. The Court of Appeals, however, acting *sua sponte*, set the matter for a rehearing en banc.

The Court of Appeals rejected the District Court's reliance on *Flagg Brothers* in finding that the requisite state action was missing in this case. The participation of state officers in executing the levy sufficiently distinguished this case from *Flagg Brothers*. The Court of Appeals stated the issue as follows:

> "[W]hether the mere institution by a private litigant of presumptively valid state judicial proceedings, without any prior or subsequent collusion or concerted action by that litigant with the state officials who then proceed with adjudicative, administrative, or executive enforcement of the proceedings, constitutes action under color of state law within contemplation of § 1983." 639 F. 2d, at 1061–1062 (footnote omitted).

The court distinguished between the acts directly chargeable to respondents and the larger context within which those acts occurred, including the direct levy by state officials on petitioner's property. While the latter no doubt amounted to state action, the former was not so clearly action under color of state law. The court held that a private party acts under color of state law within the meaning of § 1983 only when there is a usurpation or corruption of official power by the private litigant or a surrender of judicial power to the private litigant in such a way that the independence of the enforcing officer has been compromised to a significant degree. Because the court thought none of these elements was present here, the complaint failed to allege conduct under color of state law.

Because this construction of the under-color-of-state-law requirement appears to be inconsistent with prior decisions of this Court, we granted certiorari. 452 U. S. 937 (1981).

## II

Although the Court of Appeals correctly perceived the importance of *Flagg Brothers* to a proper resolution of this case,

it misread that case.[6]   It also failed to give sufficient weight to that line of cases, beginning with *Sniadach* v. *Family Finance Corp.*, 395 U. S. 337 (1969), in which the Court considered constitutional due process requirements in the context of garnishment actions and prejudgment attachments.   See *North Georgia Finishing, Inc.* v. *Di-Chem, Inc.*, 419 U. S. 601 (1975); *Mitchell* v. *W. T. Grant Co.*, 416 U. S. 600 (1974); *Fuentes* v. *Shevin*, 407 U. S. 67 (1972).   Each of these cases involved a finding of state action as an implicit predicate of the application of due process standards.   *Flagg Brothers* distinguished them on the ground that in each there was overt, official involvement in the property deprivation; there was no such overt action by a state officer in *Flagg Brothers.* 436 U. S., at 157.   Although this case falls on the *Sniadach*, and not the *Flagg Brothers*, side of this distinction, the Court of Appeals thought the garnishment and attachment cases to be irrelevant because none but *Fuentes* arose under 42 U. S. C. § 1983 and because *Fuentes* was distinguishable.[7]

---

[6] JUSTICE POWELL suggests that our opinion is not "consistent with the mode of inquiry prescribed by our cases." *Post*, at 946.   We believe the situation to be just the opposite.   We rely precisely upon the ground that the majority itself put forth in *Flagg Brothers* to distinguish that case from the earlier prejudgment attachment cases: "This total absence of overt official involvement plainly distinguishes this case from earlier decisions imposing procedural restrictions on creditors' remedies."   436 U. S., at 157. JUSTICE POWELL at no point mentions this aspect of the *Flagg Brothers* decision.   The method of inquiry we adopt is that suggested by *Adickes* v. *S. H. Kress & Co.*, 398 U. S. 144 (1970), and seemingly approved in *Flagg Brothers:* Joint action with a state official to accomplish a prejudgment deprivation of a constitutionally protected property interest will support a § 1983 claim against a private party.

[7] The Court of Appeals held *Fuentes* v. *Shevin* not to be relevant because the defendants in that case included the State Attorney General, as well as the private creditor.   In the court's view, the presence of a state official made the "private party defendant . . . merely a nominal party to the action for injunctive relief."   639 F. 2d, at 1068, n. 22.   Judge Butzner, in dissent, found *Fuentes* to be directly controlling.

It determined that it could ignore all of them because the issue in this case was not whether there was state action, but rather whether respondents acted under color of state law.

As we see it, however, the two concepts cannot be so easily disentangled. Whether they are identical or not, the state-action and the under-color-of-state-law requirements are obviously related.[8] Indeed, until recently this Court did not distinguish between the two requirements at all.

## A

In *United States* v. *Price*, 383 U. S. 787, 794, n. 7 (1966), we explicitly stated that the requirements were identical: "In cases under § 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment."[9] In support of this proposition the Court cited *Smith* v. *Allwright*, 321 U. S. 649 (1944), and *Terry* v. *Adams*, 345 U. S. 461 (1953).[10] In both of these

---

[8] The Court of Appeals itself recognized this when it stated that in two of three basic patterns of § 1983 litigation—that in which the defendant is a public official and that in which he is a private party—there is no distinction between state action and action under color of state law. Only when there is joint action by private parties and state officials, the court stated, could a distinction arise between these two requirements.

[9] We also stated that if an indictment "allege[s] conduct on the part of the 'private' defendants which constitutes 'state action,' [it alleges] action 'under color' of law within [18 U. S. C.] § 242." 383 U. S., at 794, n. 7. In *Monroe* v. *Pape*, 365 U. S. 167, 185 (1961), the Court held that "under color of law" has the same meaning in 18 U. S. C. § 242 as it does in § 1983.

[10] Besides these two Supreme Court cases, the Court cited a number of lower court cases in support of the proposition that the constitutional concept of state action satisfies the statutory requirement of action under color of state law. *Simkins* v. *Moses H. Cone Memorial Hospital*, 323 F. 2d 959 (CA4 1963); *Smith* v. *Holiday Inns*, 336 F. 2d 630 (CA6 1964); *Hampton* v. *City of Jacksonville*, 304 F. 2d 320 (CA5 1962); *Boman* v. *Birmingham Transit Co.*, 280 F. 2d 531 (CA5 1960); *Kerr* v. *Enoch Pratt Free Library*, 149 F. 2d 212 (CA4 1945). Each of these cases involved litigation between private parties in which the plaintiffs alleged unconstitutional discrimination. In each case, the only inquiry was whether the private-party defendant met the state-action requirement of the Fourteenth Amend-

cases black voters in Texas challenged their exclusion from party primaries as a violation of the Fifteenth Amendment and sought relief under 8 U. S. C. § 43 (1946 ed.).[11]   In each case, the Court understood the problem before it to be whether the discriminatory policy of a private political association could be characterized as "state action within the meaning of the Fifteenth Amendment." *Smith, supra*, at 664.[12] Having found state action under the Constitution, there was no further inquiry into whether the action of the political associations also met the statutory requirement of action "under color of state law."

Similarly, it is clear that in a § 1983 action brought against a state official, the statutory requirement of action "under color of state law" and the "state action" requirement of the Fourteenth Amendment are identical.   The Court's conclusion in *United States* v. *Classic*, 313 U. S. 299, 326 (1941), that "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law," was founded on the rule announced in *Ex parte Virginia*, 100 U. S. 339, 346–347 (1880), that the actions of a state officer who exceeds the limits of his authority constitute state action for purposes of the Fourteenth Amendment.[13]

---

ment.   Once that requirement was met, the courts granted the relief sought.

[11] Title 8 U. S. C. § 43 (1946 ed.) was reclassified as 42 U. S. C. § 1983 in 1952.

[12] There was no opinion for the Court in *Terry* v. *Adams*.   All three opinions in support of the reversal of the lower court decision pose the question as to whether the action of the private political association in question, the Jaybird Democratic Association, constituted state action for purposes of the Fifteenth Amendment.   None suggests that a Fifteenth Amendment violation by the private association might not support a cause of action because of a failure to prove action under color of state law.

[13] *United States* v. *Classic* did not involve § 1983 directly; rather, it interpreted 18 U. S. C. § 242 (then 18 U. S. C. § 52 (1940 ed.)), which is the criminal counterpart of 42 U. S. C. § 1983.   See n. 9, *supra*, on the relationship between 18 U. S. C. § 242 and 42 U. S. C. § 1983.

The decision of the Court of Appeals rests on a misreading of *Flagg Brothers*. In that case the Court distinguished two elements of a § 1983 action:

> "[Plaintiffs] are first bound to show that they have been deprived of a right 'secured by the Constitution and the laws' of the United States. They must secondly show that Flagg Brothers deprived them of this right acting 'under color of any statute' of the State of New York. It is clear that these two elements denote two separate areas of inquiry. *Adickes* v. *S. H. Kress & Co.*, 398 U. S. 144, 150 (1970)." 436 U. S., at 155–156.

Plaintiffs' case foundered on the first requirement. Because a due process violation was alleged and because the Due Process Clause protects individuals only from governmental and not from private action, plaintiffs had to demonstrate that the sale of their goods was accomplished by state action. The Court concluded that the sale, although authorized by state law, did not amount to state action under the Fourteenth Amendment, and therefore set aside the Court of Appeals' contrary judgment.

There was no reason in *Flagg Brothers* to address the question whether there was action under color of state law. The Court expressly eschewed deciding whether that requirement was satisfied by private action authorized by state law. *Id.*, at 156. Although the state-action and under-color-of-state-law requirements are "separate areas of inquiry," *Flagg Brothers* did not hold nor suggest that state action, if present, might not satisfy the § 1983 requirement of conduct under color of state law. Nevertheless, the Court of Appeals relied on *Flagg Brothers* to conclude in this case that state action under the Fourteenth Amendment is not necessarily action under color of state law for purposes of § 1983. We do not agree.

The two-part approach to a § 1983 cause of action, referred to in *Flagg Brothers*, was derived from *Adickes* v.

*S. H. Kress & Co.*, 398 U. S. 144, 150 (1970). *Adickes* was a § 1983 action brought against a private party, based on a claim of racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. Although stating that the § 1983 plaintiff must show both that he has been deprived "of a right secured by the 'Constitution and laws' of the United States" and that the defendant acted "under color of any statute . . . of any State," *ibid.*, we held that the private party's joint participation with a state official in a conspiracy to discriminate would constitute both "state action essential to show a direct violation of petitioner's Fourteenth Amendment equal protection rights" and action "'under color' of law for purposes of the statute." *Id.*, at 152.[14] In

---

[14] The *Adickes* opinion contained the following statement, 398 U. S., at 162, n. 23: "Whatever else may also be necessary to show that a person has acted 'under color of [a] statute' for purposes of § 1983, . . . we think it essential that he act with the knowledge of and pursuant to that statute." This statement obviously was meant neither to establish the definition of action under color of state law, nor to establish a distinction between this statutory requirement and the constitutional standard of state action. The statement was made in response to an argument that the discrimination by the private party was pursuant to the state trespass statute and that this would satisfy the requirements of § 1983. The Court rejected this because there had been no factual showing that the defendants had acted with knowledge of, or pursuant to, this statute. It was in this context, that this statement was made.

JUSTICE BRENNAN, writing separately, did suggest in *Adickes* that "when a private party acts alone, more must be shown . . . to establish that he acts 'under color of' a state statute or other authority than is needed to show that his action constitutes state action." *Id.*, at 210 (footnote omitted). Even in his view, however, when a private party acts in conjunction with a state official, whatever satisfies the state-action requirement of the Fourteenth Amendment satisfies the under-color-of-state-law requirement of the statute. JUSTICE BRENNAN's position rested, at least in part, on a much less strict standard of what would constitute "state action" in the area of racial discrimination than that adopted by the majority. In any case, the position he articulated there has never been adopted by the Court.

support of our conclusion that a private party held to have violated the Fourteenth Amendment "can be liable under § 1983," *ibid.*, we cited that part of *United States* v. *Price,* 383 U. S., at 794, n. 7, in which we had concluded that state action and action under color of state law are the same (quoted *supra*, at 928). *Adickes* provides no support for the Court of Appeals' novel construction of § 1983.[15]

## B

The decision of the Court of Appeals is difficult to reconcile with the Court's garnishment and prejudgment attachment cases and with the congressional purpose in enacting § 1983.

Beginning with *Sniadach* v. *Family Finance Corp.*, 395 U. S. 337 (1969), the Court has consistently held that constitutional requirements of due process apply to garnishment and prejudgment attachment procedures whenever officers

---

[15] JUSTICE POWELL's discussion of *Adickes* confuses the two counts of the complaint in that case. There was a conspiracy count which alleged that respondent—a private party—and a police officer had conspired "(1) 'to deprive [petitioner] of her right to enjoy equal treatment and service in a place of public accommodation'; and (2) to cause her arrest 'on the false charge of vagrancy.'" *Id.*, at 149–150. It was with respect to this count, which did not allege any unconstitutional statute or custom, that the Court held that joint action of the private party and the police officer was sufficient to support a § 1983 suit against that party. The other count of her complaint was a substantive count in which she alleged that the private act of discrimination was pursuant to a "custom of the community to segregate the races in public eating places." Here the Court did not rely on any "joint action" theory, but held that "petitioner would show an abridgment of her equal protection right, if she proves that Kress refused her service because of a state-enforced custom." *Id.*, at 171, 173. JUSTICE POWELL is wrong when he summarizes *Adickes* as holding that "a private party acts under color of law when he conspires with state officials to secure the application of a state law so plainly unconstitutional as to enjoy no presumption of validity." *Post*, at 954–955. This is to confuse the conspiracy and the substantive counts at issue in *Adickes*. Unless one argues that the state vagrancy law was unconstitutional—an argument no one made in *Adickes*—the joint action count of *Adickes* did not involve a state law, whether "plainly unconstitutional" or not.

of the State act jointly with a creditor in securing the property in dispute. *Sniadach* and *North Georgia Finishing, Inc.* v. *Di-Chem, Inc.*, 419 U. S. 601 (1975), involved state-created garnishment procedures; *Mitchell* v. *W. T. Grant Co.*, 416 U. S. 600 (1974), involved execution of a vendor's lien to secure disputed property. In each of these cases state agents aided the creditor in securing the disputed property; but in each case the federal issue arose in litigation between creditor and debtor in the state courts and no state official was named as a party. Nevertheless, in each case the Court entertained and adjudicated the defendant-debtor's claim that the procedure under which the private creditor secured the disputed property violated federal constitutional standards of due process. Necessary to that conclusion is the holding that private use of the challenged state procedures with the help of state officials constitutes state action for purposes of the Fourteenth Amendment.

*Fuentes* v. *Shevin*, 407 U. S. 67 (1972), was a § 1983 action brought against both a private creditor and the State Attorney General. The plaintiff sought declaratory and injunctive relief, on due process grounds, from continued enforcement of state statutes authorizing prejudgment replevin. The plaintiff prevailed; if the Court of Appeals were correct in this case, there would have been no § 1983 cause of action against the private parties. Yet they remained parties, and judgment ran against them in this Court.[16]

---

[16] We thus find incomprehensible JUSTICE POWELL's statement that we cite no cases in which a private decision to invoke a presumptively valid state legal process has been held to be state action. *Post*, at 950. Likewise, his discussion of these cases, *post*, at 952–953, steadfastly ignores the predicate for the holding in each case that the debtor could challenge the constitutional adequacy of the private creditor's seizure of his property. That predicate was necessarily the principle that a private party's invocation of a seemingly valid prejudgment remedy statute, coupled with the aid of a state official, satisfies the state-action requirement of the Fourteenth Amendment and warrants relief against the private party.

If a defendant debtor in state-court debt collection proceedings can successfully challenge, on federal due process grounds, the plaintiff creditor's resort to the procedures authorized by a state statute, it is difficult to understand why that same behavior by the state-court plaintiff should not provide a cause of action under § 1983. If the creditor-plaintiff violates the debtor-defendant's due process rights by seizing his property in accordance with statutory procedures, there is little or no reason to deny to the latter a cause of action under the federal statute, § 1983, designed to provide judicial redress for just such constitutional violations.

To read the "under color of any statute" language of the Act in such a way as to impose a limit on those Fourteenth Amendment violations that may be redressed by the § 1983 cause of action would be wholly inconsistent with the purpose of § 1 of the Civil Rights Act of 1871, 17 Stat. 13, from which § 1983 is derived. The Act was passed "for the express purpose of 'enforc[ing] the Provisions of the Fourteenth Amendment.'" *Lynch* v. *Household Finance Corp.*, 405 U. S. 538, 545 (1972). The history of the Act is replete with statements indicating that Congress thought it was creating a remedy as broad as the protection that the Fourteenth Amendment affords the individual. Perhaps the most direct statement of this was that of Senator Edmunds, the manager of the bill in the Senate: "[Section 1 is] so very simple and really reenact[s] the Constitution." Cong. Globe, 42d Cong., 1st Sess., 569 (1871). Representative Bingham similarly stated that the bill's purpose was "the enforcement . . . of the Constitution on behalf of every individual citizen of the Republic . . . to the extent of the rights guarantied to him by the Constitution." *Id.*, App. 81.[17]

---

[17] In fact, throughout the congressional debate over the 1871 Act, the bill was officially described as a bill "to enforce the provisions of the fourteenth amendment to the Constitution of the United States, and for other purposes." See also, *e. g.*, remarks of Senator Trumbull in describing the purpose of the House in passing the Act: "[A]s the bill passed the House of

In sum, the line drawn by the Court of Appeals is inconsistent with our prior cases and would substantially undercut the congressional purpose in providing the § 1983 cause of action. If the challenged conduct of respondents constitutes state action as delimited by our prior decisions, then that conduct was also action under color of state law and will support a suit under § 1983.[18]

---

Representatives, it was understood by the members of that body to go no further than to protect persons in the rights which were guarantied to them by the Constitution and laws of the United States," Cong. Globe, 42d Cong., 1st Sess., 579 (1871); and remarks of Representative Shellabarger on the relationship between § 1 of the bill and the Fourteenth Amendment, *id.*, App. 68.

[18] Our conclusion in this case is not inconsistent with the statement in *Flagg Brothers* that "these two elements [state action and action under color of state law] denote two separate areas of inquiry." 436 U. S., at 155–156. First, although we hold that conduct satisfying the state-action requirement of the Fourteenth Amendment satisfies the statutory requirement of action under color of state law, it does not follow from that that all conduct that satisfies the under-color-of-state-law requirement would satisfy the Fourteenth Amendment requirement of state action. If action under color of state law means nothing more than that the individual act "with the knowledge of and pursuant to that statute," *Adickes* v. *S. H. Kress & Co.*, 398 U. S., at 162, n. 23, then clearly under *Flagg Brothers* that would not, in itself, satisfy the state-action requirement of the Fourteenth Amendment. Second, although we hold in this case that the under-color-of-state-law requirement does not add anything not already included within the state-action requirement of the Fourteenth Amendment, § 1983 is applicable to other constitutional provisions and statutory provisions that contain no state-action requirement. Where such a federal right is at issue, the statutory concept of action under color of state law would be a distinct element of the case not satisfied implicitly by a finding of a violation of the particular federal right.

Nor is our decision today inconsistent with *Polk County* v. *Dodson*, 454 U. S. 312 (1981). In *Polk County*, we held that a public defender's actions, when performing a lawyer's traditional functions as counsel in a state criminal proceeding, would not support a § 1983 suit. Although we analyzed the public defender's conduct in light of the requirement of action "under color of state law," we specifically stated that it was not necessary in that case to consider whether that requirement was identical to the

## III

As a matter of substantive constitutional law the state-action requirement reflects judicial recognition of the fact that "most rights secured by the Constitution are protected only against infringement by governments," *Flagg Brothers*, 436 U. S., at 156. As the Court said in *Jackson* v. *Metropolitan Edison Co.*, 419 U. S. 345, 349 (1974):

> "In 1883, this Court in the *Civil Rights Cases*, 109 U. S. 3, affirmed the essential dichotomy set forth in [the Fourteenth] Amendment between deprivation by the State, subject to scrutiny under its provisions, and private conduct, 'however discriminatory or wrongful,' against which the Fourteenth Amendment offers no shield."

Careful adherence to the "state action" requirement preserves an area of individual freedom by limiting the reach of federal law and federal judicial power. It also avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed. A major consequence is to require the courts to respect the limits of

---

"state action" requirement of the Fourteenth Amendment: "Although this Court has sometimes treated the questions as if they were identical, see *United States* v. *Price*, 383 U. S. 787, 794, and n. 7 (1966), we need not consider their relationship in order to decide this case." *Id.*, at 322, n. 12. We concluded there that a public defender, although a state employee, in the day-to-day defense of his client, acts under canons of professional ethics in a role adversarial to the State. Accordingly, although state employment is generally sufficient to render the defendant a state actor under our analysis, *infra*, at 937, it was "peculiarly difficult" to detect any action of the State in the circumstances of that case. 454 U. S., at 320. In *Polk County*, we also rejected respondent's claims against governmental agencies because he "failed to allege any policy that arguably violated his rights under the Sixth, Eighth, or Fourteenth Amendments." *Id.*, at 326. Because respondent failed to challenge any rule of conduct or decision for which the State was responsible, his allegations would not support a claim of state action under the analysis proposed below. *Infra*, at 937. Thus, our decision today does not suggest a different outcome in *Polk County*.

their own power as directed against state governments and private interests. Whether this is good or bad policy, it is a fundamental fact of our political order.

Our cases have accordingly insisted that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State. These cases reflect a two-part approach to this question of "fair attribution." First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible. In *Sniadach, Fuentes, W. T. Grant,* and *North Georgia,* for example, a state statute provided the right to garnish or to obtain prejudgment attachment, as well as the procedure by which the rights could be exercised. Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State. Without a limit such as this, private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them.

Although related, these two principles are not the same. They collapse into each other when the claim of a constitutional deprivation is directed against a party whose official character is such as to lend the weight of the State to his decisions. See *Monroe* v. *Pape,* 365 U. S. 167, 172 (1961). The two principles diverge when the constitutional claim is directed against a party without such apparent authority, *i. e.,* against a private party. The difference between the two inquiries is well illustrated by comparing *Moose Lodge No. 107* v. *Irvis,* 407 U. S. 163 (1972), with *Flagg Brothers, supra.*

In *Moose Lodge,* the Court held that the discriminatory practices of the appellant did not violate the Equal Protection Clause because those practices did not constitute "state action." The Court focused primarily on the question of

whether the admittedly discriminatory policy could in any way be ascribed to a governmental decision.[19] The inquiry, therefore, looked to those policies adopted by the State that were applied to appellant. The Court concluded as follows:

> "We therefore hold, that with the exception hereafter noted, the operation of the regulatory scheme enforced by the Pennsylvania Liquor Control Board does not sufficiently implicate the State in the discriminatory guest policies of Moose Lodge to . . . make the latter 'state action' within the ambit of the Equal Protection Clause of the Fourteenth Amendment." 407 U. S., at 177.

In other words, the decision to discriminate could not be ascribed to any governmental decision; those governmental decisions that did affect Moose Lodge were unconnected with its discriminatory policies.[20]

*Flagg Brothers* focused on the other component of the state-action principle. In that case, the warehouseman proceeded under New York Uniform Commercial Code, § 7–210, and the debtor challenged the constitutionality of that provision on the grounds that it violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Undoubtedly the State was responsible for the statute. The response of the Court, however, focused not on the terms of the statute but on the character of the defendant to the § 1983

---

[19] There are elements of the other state-action inquiry in the opinion as well. This is found primarily in the effort to distinguish the relationship of Moose Lodge and the State from that between the State and the restaurant considered in *Burton* v. *Wilmington Parking Authority*, 365 U. S. 715 (1961). See 407 U. S., at 175.

[20] The "one exception" further illustrates this point. The Court enjoined enforcement of a state rule requiring Moose Lodge to comply with its own constitution and bylaws insofar as they contained racially discriminatory provisions. State enforcement of this rule, either judicially or administratively, would, under the circumstances, amount to a governmental decision to adopt a racially discriminatory policy.

suit: Action by a private party pursuant to this statute, without something more, was not sufficient to justify a characterization of that party as a "state actor." The Court suggested that that "something more" which would convert the private party into a state actor might vary with the circumstances of the case. This was simply a recognition that the Court has articulated a number of different factors or tests in different contexts: *e. g.*, the "public function" test, see *Terry* v. *Adams*, 345 U. S. 461 (1953); *Marsh* v. *Alabama*, 326 U. S. 501 (1946); the "state compulsion" test, see *Adickes* v. *S. H. Kress & Co.*, 398 U. S., at 170; the "nexus" test, see *Jackson* v. *Metropolitan Edison Co.*, 419 U. S. 345 (1974); *Burton* v. *Wilmington Parking Authority*, 365 U. S. 715 (1961); and, in the case of prejudgment attachments, a "joint action test," *Flagg Brothers*, 436 U. S., at 157.[21] Whether these different tests are actually different in operation or simply different ways of characterizing the necessarily fact-bound inquiry that confronts the Court in such a situation need not be resolved here. See *Burton, supra,* at 722 ("Only by sifting facts and weighing circumstances can the non-obvious involvement of the State in private conduct be attributed its true significance").

## IV

Turning to this case, the first question is whether the claimed deprivation has resulted from the exercise of a right or privilege having its source in state authority. The second question is whether, under the facts of this case, respondents, who are private parties, may be appropriately characterized as "state actors."

---

[21] Contrary to the suggestion of JUSTICE POWELL's dissent, we do not hold today that "a private party's mere invocation of state legal procedures constitutes 'joint participation' or 'conspiracy' with state officials satisfying the § 1983 requirement of action under color of law." *Post,* at 951. The holding today, as the above analysis makes clear, is limited to the particular context of prejudgment attachment.

Both the District Court and the Court of Appeals noted the ambiguous scope of petitioner's contentions: "There has been considerable confusion throughout the litigation on the question whether Lugar's ultimate claim of unconstitutional deprivation was directed at the Virginia statute itself or only at its erroneous application to him." 639 F. 2d, at 1060, n. 1. Both courts held that resolution of this ambiguity was not necessary to their disposition of the case: both resolved it, in any case, in favor of the view that petitioner was attacking the constitutionality of the statute as well as its misapplication. In our view, resolution of this issue is essential to the proper disposition of the case.

Petitioner presented three counts in his complaint. Count three was a pendent claim based on state tort law; counts one and two claimed violations of the Due Process Clause. Count two alleged that the deprivation of property resulted from respondents' "malicious, wanton, willful, opressive [sic], [and] unlawful acts." By "unlawful," petitioner apparently meant "unlawful under state law." To say this, however, is to say that the conduct of which petitioner complained could not be ascribed to any governmental decision; rather, respondents were acting contrary to the relevant policy articulated by the State. Nor did they have the authority of state officials to put the weight of the State behind their private decision, i. e., this case does not fall within the abuse of authority doctrine recognized in *Monroe* v. *Pape*, 365 U. S. 167 (1961). That respondents invoked the statute without the grounds to do so could in no way be attributed to a state rule or a state decision. Count two, therefore, does not state a cause of action under § 1983 but challenges only private action.

Count one is a different matter. That count describes the procedures followed by respondents in obtaining the prejudgment attachment as well as the fact that the state court subsequently ordered the attachment dismissed because respondents had not met their burden under state law. Pe-

titioner then summarily states that this sequence of events deprived him of his property without due process. Although it is not clear whether petitioner is referring to the state-created procedure or the misuse of that procedure by respondents, we agree with the lower courts that the better reading of the complaint is that petitioner challenges the state statute as procedurally defective under the Fourteenth Amendment.[22]

While private misuse of a state statute does not describe conduct that can be attributed to the State, the procedural scheme created by the statute obviously is the product of state action. This is subject to constitutional restraints and properly may be addressed in a § 1983 action, if the second element of the state-action requirement is met as well.

As is clear from the discussion in Part II, we have consistently held that a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a "state actor" for purposes of the Fourteenth Amendment. The rule in these cases is the same as that articulated in *Adickes* v. *S. H. Kress & Co., supra,* at. 152, in the context of an equal protection deprivation:

> "'Private persons, jointly engaged with state officials in the prohibited action, are acting "under color" of law for purposes of the statute. To act "under color" of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents,'" quoting *United States* v. *Price,* 383 U. S., at 794.

---

[22] This confusion in the nature of petitioner's allegations continued in oral argument in this Court. Although at various times counsel for petitioner seemed to deny that petitioner challenged the constitutionality of the statute, see, *e. g.,* Tr. of Oral Arg. 11, he also stated that

"[t]he claim is that the action as taken, even if it were just line by line in accordance with Virginia law—whether or not they did it right, the claim is that it was in violation of Lugar's constitutional rights." *Id.,* at 19.

The Court of Appeals erred in holding that in this context "joint participation" required something more than invoking the aid of state officials to take advantage of state-created attachment procedures. That holding is contrary to the conclusions we have reached as to the applicability of due process standards to such procedures. Whatever may be true in other contexts, this is sufficient when the State has created a system whereby state officials will attach property on the *ex parte* application of one party to a private dispute.

In summary, petitioner was deprived of his property through state action; respondents were, therefore, acting under color of state law in participating in that deprivation. Petitioner did present a valid cause of action under § 1983 insofar as he challenged the constitutionality of the Virginia statute; he did not insofar as he alleged only misuse or abuse of the statute.[23]

The judgment is reversed in part and affirmed in part, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

---

[23] JUSTICE POWELL is concerned that private individuals who innocently make use of seemingly valid state laws would be responsible, if the law is subsequently held to be unconsitutional, for the consequences of their actions. In our view, however, this problem should be dealt with not by changing the character of the cause of action but by establishing an affirmative defense. A similar concern is at least partially responsible for the availability of a good-faith defense, or qualified immunity, to state officials. We need not reach the question of the availability of such a defense to private individuals at this juncture. What we said in *Adickes*, 398 U. S., at 174, n. 44, when confronted with this question is just as applicable today: "We intimate no views concerning the relief that might be appropriate if a violation is shown. The parties have not briefed these remedial issues, and if a violation is proved they are best explored in the first instance below in light of the new record that will be developed on remand. Nor do we mean to determine at this juncture whether there are any defenses available to defendants in § 1983 actions like the one at hand. Cf. *Pierson* v. *Ray*, 386 U. S. 547 (1967)" (citations omitted).

CHIEF JUSTICE BURGER, dissenting.

Whether we are dealing with suits under § 1983 or suits brought pursuant to the Fourteenth Amendment, in my view the inquiry is the same: is the claimed infringement of a federal right fairly attributable to the State. *Rendell-Baker* v. *Kohn, ante,* at 838. Applying this standard, it cannot be said that the actions of the named respondents are fairly attributable to the State.* Respondents did no more than invoke a presumptively valid state prejudgment attachment procedure available to all. Relying on a dubious "but for" analysis, the Court erroneously concludes that the subsequent procedural steps taken by the State in attaching a putative debtor's property in some way transforms respondents' acts into actions of the State. This case is no different from the situation in which a private party commences a lawsuit and secures injunctive relief which, even if temporary, may cause significant injury to the defendant. Invoking a judicial process, of course, implicates the State and its officers but does not transform essentially private conduct into actions of the State. *Dennis* v. *Sparks,* 449 U. S. 24 (1980). Similarly, one who practices a trade or profession, drives an automobile, or builds a house under a state license is not engaging in acts fairly attributable to the state. In both *Dennis* and the instant case petitioner's remedy lies in private suits for damages such as malicious prosecution. The Court's opinion expands the reach of the statute beyond anything intended by Congress. It may well be a consequence of too casually falling into a semantical trap because of the figurative use of the term "color of state law."

---

*The pleadings in this case amply demonstrate that the challenged conduct was directed solely at respondents' acts. The unlawful actions alleged were that respondents made "conclusory allegations," App. 5, respondents lacked a "factual basis" for attachment, *id.,* at 10, and respondents lacked "good cause to believe facts which would support" attachment. *Id.,* at 19. There is no allegation of collusion or conspiracy with state actors.

JUSTICE POWELL, with whom JUSTICE REHNQUIST and JUSTICE O'CONNOR join, dissenting.

Today's decision is a disquieting example of how expansive judicial decisionmaking can ensnare a person who had every reason to believe he was acting in strict accordance with law. The case began nearly five years ago as the outgrowth of a simple suit on a debt in a Virginia state court. Respondent—a small wholesale oil dealer in Southside, Va.—brought suit against petitioner Lugar, a truckstop owner who had failed to pay a debt.[1] The suit was to collect this indebtedness. Fearful that petitioner might dissipate his assets before the debt was collected, respondent also filed a petition in state court seeking sequestration of certain of Lugar's assets. He did so under a Virginia statute, traceable at least to 1819, that permits creditors to seek prejudgment attachment of property in the possession of debtors.[2] No court had questioned the validity of the statute, and it remains presumptively valid. The Clerk of the state court duly issued a writ of attachment, and the County Sheriff then executed it. There is no allegation that respondent conspired with the state officials to deny petitioner the fair protection of state or federal law.

---

[1] The state action, filed in the name of the Edmondson Oil Co., alleged that Lugar owed $41,983 for products and merchandise previously delivered. App. 22. In the present suit Lugar has named as defendants both the Edmondson Oil Co. and its president, Ronald Barbour. As the respondent Barbour is the sole stockholder of Edmondson Oil Co., *id.*, at 2, and appears to have directed all its actions in this litigation, see *id.*, at 26, I refer throughout to Barbour as if he were the sole respondent.

[2] See Va. Code § 8.01–533 *et seq.* (1977). At the time of the attachment in this case, the applicable provisions were Va. Code § 8–519 *et seq.* (1973). The Virginia attachment provisions have remained essentially in their present form despite numerous recodifications since 1819. See Va. Code § 8–519 *et seq.* (1950); Va. Code § 6378 *et seq.* (1919); Va. Code § 2959 *et seq.* (1887); Va. Code, ch. 151 (1849); Va. Code, ch. 123 (1819).

Respondent ultimately prevailed in his lawsuit. The petitioner Lugar was ordered by a court to pay his debt. A state court did find, however, that Lugar's assets should not have been attached prior to a judgment on the underlying action.

Following this decision Lugar instituted legal action in the United States District Court for the Western District of Virginia. Suing under a federal statute, 42 U. S. C. § 1983, Lugar alleged that the respondent—by filing a petition in state court—had acted "under color of law" *and* had caused the deprivation of constitutional rights under the Fourteenth Amendment—an Amendment that does not create rights enforceable against private citizens, such as one would have assumed respondent to be, but only against the States. *Rendell-Baker* v. *Kohn, ante*, at 837; *Flagg Bros., Inc.* v. *Brooks*, 436 U. S. 149, 156 (1978); *Shelley* v. *Kraemer*, 334 U. S. 1, 13 (1948); *Civil Rights Cases*, 109 U. S. 3, 11 (1883).[3] Both the District Court and the Court of Appeals agreed that petitioner had no cause of action under § 1983. They sensibly found that respondent could not be held responsible for any deprivation of constitutional rights and that the suit did not belong in federal court.

This Court today reverses the judgment of those lower courts. It holds that respondent, a private citizen who did no more than commence a legal action of a kind traditionally initiated by private parties, thereby engaged in "state action." This decision is as unprecedented as it is implausible. It is plainly unjust to the respondent, and the Court makes no

---

[3] Title 42 U. S. C. § 1983, at the time in question, provided:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

argument to the contrary. Respondent, who was represented by counsel, could have had no notion that his filing of a petition in state court, in the effort to secure payment of a private debt, made him a "state actor" liable in damages for allegedly unconstitutional action by the Commonwealth of Virginia. Nor is the Court's analysis consistent with the mode of inquiry prescribed by our cases. On the contrary, the Court undermines fundamental distinctions between the common-sense categories of state and private conduct and between the legal concepts of "state action" and private action "under color of law."

I

The plain language of 42 U. S. C. § 1983 establishes that a plaintiff must satisfy two jurisdictional requisites to state an actionable claim. First, he must allege the violation of a right "secured by the Constitution and laws" of the United States. Because "most rights secured by the Constitution are protected only against infringement by governments," *Flagg Bros., Inc.* v. *Brooks*, 436 U. S., at 156, this requirement compels an inquiry into the presence of state action. Second, a § 1983 plaintiff must show that the alleged deprivation was caused by a person acting "under color" of law. In *Flagg Bros.*, this Court affirmed that "these two elements denote two separate areas of inquiry." *Id.*, at 155–156. See *Adickes* v. *S. H. Kress & Co.*, 398 U. S. 144, 152 (1970).

This case demonstrates why separate inquiries are required. Here it is not disputed that the Virginia Sheriff and Clerk of Court, the state officials who sequestered petitioner's property in the manner provided by Virginia law, engaged in state action. Yet the petitioner, while alleging constitutional injury from this action by state officials, did not sue the State or its agents. In these circumstances the Court of Appeals correctly stated that the relevant inquiry was the second identified in *Flagg Bros.*: whether the respondent, a private citizen whose only action was to invoke a presumptively valid state attachment process, had acted under color of state law in "causing" the State to deprive peti-

tioner of alleged constitutional rights.[4]   Consistently with past decisions of this Court, the Court of Appeals concluded that respondent's private conduct had not occurred under color of law.

Rejecting the reasoning of the Court of Appeals, the Court opinion inexplicably conflates the two inquiries mandated by *Flagg Bros.*   Ignoring that this case involves two sets of actions—one by respondent, who merely filed a suit and accompanying sequestration petition; another by the state officials, who issued the writ and executed the lien—it wrongly frames the question before the Court, not as whether the private respondent acted under color of law in filing the petition, but as "whether . . . respondents, who are private parties, may be appropriately characterized as 'state actors.'"   *Ante,* at 939.   It then concludes that they may, on the theory that a private party who invokes "the aid of state officials to take advantage of state-created attachment procedures" is a "joint participant" with the State and therefore a "state actor." "The rule," the Court asserts, is as follows:

> "Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute.   To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in a joint activity with the State or its agents."   *Ante,* at 941, quoting *Adickes* v. *S. H. Kress & Co., supra,* at 152, in turn quoting *United States* v. *Price,* 383 U. S. 787, 794 (1966).

---

[4] Judge Phillips' excellent opinion for the en banc Court of Appeals correctly defined the question presented as "whether the mere institution by a private litigant of presumptively valid state judicial proceedings, without any prior or subsequent collusion or concerted action by that litigant with the state officials who then proceed with adjudicative, administrative, or executive enforcement of the proceedings, constitutes action under color of state law within the contemplation of § 1983."   639 F. 2d 1058, 1061–1062 (CA4 1981) (footnote omitted).

There are at least two fallacies in the Court's conclusion. First, as is apparent from the quotation, our cases have *not* established that private "joint participants" with state officials themselves necessarily become state actors. Where private citizens interact with state officials in the pursuit of merely private ends, the appropriate inquiry generally is whether the private parties have acted "under color of law." Second, even when the inquiry is whether an action occurred under color of law, our cases make clear that the "joint participation" standard is not satisfied when a private citizen does no more than invoke a presumptively valid judicial process in pursuit only of legitimate private ends.

## II

As this Court recognized in *Monroe* v. *Pape*, 365 U. S. 167, 172 (1961), the historic purpose of § 1983 was to prevent state officials from using the cloak of their authority under state law to violate rights protected against state infringement by the Fourteenth Amendment.[5] The Court accordingly is correct that an important inquiry in a § 1983 suit against a private party is whether there is an allegation of wrongful "conduct that can be attributed to the State." *Ante*, at 941. This is the first question referred to in *Flagg Bros.* But there still remains the second *Flagg Bros.* question: whether this state action fairly can be attributed to the respondent, whose

---

[5] State officials acting in their official capacities, even if in abuse of their lawful authority, generally are held to act "under color" of law. *E. g.*, *Monroe* v. *Pape*, 365 U. S., at 171–172; *Ex parte Virginia*, 100 U. S. 339, 346–347 (1880). This is because such officials are "clothed with the authority" of state law, which gives them power to perpetrate the very wrongs that Congress intended § 1983 to prevent. *United States* v. *Classic*, 313 U. S. 299, 326 (1941); *Ex parte Virginia, supra*, at 346–347. Cf. *Polk County* v. *Dodson*, 454 U. S. 312 (1981) (a public defender, representing an indigent client in a criminal proceeding, performs a function for which the authority of his state office is not needed, and therefore does not act under color of state law when engaged in a defense attorney's traditionally private roles).

only action was to invoke a presumptively valid attachment statute. This question, unasked by the Court, reveals the fallacy of its conclusion that respondent may be held accountable for the attachment of property because he was a "state actor."[6] From the occurrence of state action taken by the Sheriff who sequestered petitioner's property, it does not follow that respondent became a "state actor" simply because the Sheriff was. This Court, until today, has never endorsed this non sequitur.

It of course is true that respondent's private action was *followed* by state action, and that the private and the state actions were not unconnected. But "[t]hat the State responds to [private] actions by [taking action of its own] does not render it *responsible* for those [private] actions." *Blum* v. *Yaretsky, post,* at 1005. See *Flagg Bros.,* 436 U. S., at 164–165; *Jackson* v. *Metropolitan Edison Co.,* 419 U. S. 345, 357 (1974). And where the State is not responsible for a private decision to behave in a certain way, the private action generally cannot be considered "state action" within the meaning of our cases. See, *e. g., Blum* v. *Yaretsky, post,* at 1004–1005; *Moose Lodge No. 107* v. *Irvis,* 407 U. S. 163, 172–173 (1972). As in *Jackson* v. *Metropolitan Edison Co., supra,* "[r]espondent's exercise of the choice allowed by state law where

---

[6] The Court, *ante,* at 928, quotes *United States* v. *Price,* 383 U. S. 787, 794, n. 7 (1966), as establishing that "[i]n cases under § 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment." In *Price,* however, the *same* conduct by the same actors constituted both "state action" and the action "under color" of law. See 383 U. S., at 794, n. 7 (if an indictment alleges "conduct on the part of the 'private' defendants which constitutes 'state action,' [it also alleges] action 'under color of law' . . ."). The situation in this case is quite different. The present case involves "state action" by the Sheriff—action that also was "under color of law" under *Price.* But the real question here is whether the conduct of the private respondent constituted *either* state action or action under color of law. The *Price* quotation plainly does not resolve this question. And the cases cited in *Price,* on which the Court also relies, are similarly inapposite.

the initiative comes from it and not from the State, does not make its action in doing so 'state action' for purposes of the Fourteenth Amendment." 419 U. S., at 357 (footnote omitted).

This Court of course has held that private parties are amenable to suit under § 1983 when "jointly engaged" with state officials in the violation of constitutional rights. See *Adickes* v. *S. H. Kress & Co.*, 398 U. S. 144 (1970).[7] Yet the Court, in advancing its "joint participation" theory, does not cite a single case in which a private decision to invoke a presumptively valid state legal process has been held to constitute state action. Even the quotation on which the Court principally relies for its statement of the applicable "rule," *ante*, at 941, does not refer to state action. Rather, it states explicitly that "[p]rivate persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute."

As illustrated by this quotation, our cases have recognized a distinction between "state action" and private action under "color of law." This distinction is sound in principle. It also is consistent with and supportive of the distinction between "private" conduct and government action that is subject to the procedural limitations of the Due Process Clause of the Fourteenth Amendment. As the Court itself notes: "Careful adherence to the 'state action' requirement preserves an area of individual freedom by limiting the reach of federal law and federal judicial power. It also avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed." *Ante*, at 936.

A "color of law" inquiry acknowledges that private individuals, engaged in unlawful joint behavior with state officials, may be *personally* responsible for wrongs that they cause to occur. But it does not confuse private actors with the

---

[7] In *Adickes* the term "jointly engaged" appears to have been used specifically to connote engagement in a "conspiracy." See 398 U. S., at 152–153.

State—the fallacy of the analysis adopted today by the Court. In this case involving the private action of the respondent in petitioning the state courts of Virginia, the appropriate inquiry as to respondent's liability is not whether he was a state actor, but whether he acted under color of law. It is to this question that I therefore turn.

## III

Contrary to the position of the Court, our cases do not establish that a private party's mere invocation of state legal procedures constitutes "joint participation" or "conspiracy" with state officials satisfying the § 1983 requirement of action under color of law. In *Dennis* v. *Sparks*, 449 U. S. 24 (1980), we held that private parties acted under color of law when corruptly conspiring with a state judge in a joint scheme to defraud. In so holding, however, we explicitly stated that "merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge." *Id.*, at 28. This conclusion is reinforced by our more recent decision in *Polk County* v. *Dodson*, 454 U. S. 312 (1981). As we held to be true with respect to the defense of a criminal defendant, invocation of state legal process is "essentially a private function . . . for which state office and authority are not needed." *Id.*, at 319. These recent decisions make clear that independent, private decisions made in the context of litigation cannot be said to occur under color of law.[8] The Court nevertheless advances two principal grounds for its holding to the contrary.

---

[8] The Court avers that its holding "is limited to the particular context of prejudgment attachment." *Ante*, at 939, n. 21. However welcome, this limitation lacks a principled basis. It is unclear why a private party engages in state action when filing papers seeking an attachment of property, but not when seeking other relief (*e. g.*, an injunction), or when summoning police to investigate a suspected crime.

## A

The Court argues that petitioner's action under § 1983 is supported by cases in which this Court has applied due process standards to state garnishment and prejudgment attachment procedures. The Court relies specifically on *Sniadach* v. *Family Finance Corp.*, 395 U. S. 337 (1969); *Fuentes* v. *Shevin*, 407 U. S. 67 (1972); *Mitchell* v. *W. T. Grant Co.*, 416 U. S. 600 (1974); and *North Georgia Finishing, Inc.* v. *Di-Chem, Inc.*, 419 U. S. 601 (1975). According to the Court, these cases establish that a private party acts "under color" of law when seeking the attachment of property under an unconstitutional state statute.[9] In fact, a careful reading demonstrates that they provide no authority for this proposition.

Of the cases cited by the Court, *Sniadach*, *Mitchell*, and *Di-Chem* all involved attacks on the validity of state attachment or garnishment statutes. None of the cases alleged that the private creditor was a joint actor with the State, and none involved a claim for damages against the creditor. Each case involved a state suit, not a federal action under § 1983. It therefore was unnecessary in any of these cases for this Court to consider whether the creditor, by virtue of instituting the attachment or garnishment, became a state actor or acted under color of state law. There is not one word in any of these cases that so characterizes the private creditor.[10] In *Fuentes* v. *Shevin*, the Court did consider a

---

[9] At one stage in the litigation the respondent averred that his lawsuit raised "[n]o question of the constitutional validity of the State statutes." Plaintiff's Memorandum in Opposition to Motion to Dismiss 3. The District Court nevertheless concluded that "the complaint can only be read as challenging the constitutionality of Virginia's attachment statute." App. to Pet. for Cert. 38. The Court of Appeals agreed. 639 F. 2d, at 1060, and n. 1.

[10] The Court finds support for its contrary view only by reading these cases as implicitly embracing the same fallacy as the Court does today. In *Sniadach*, *Mitchell*, and *Di-Chem*—as in this case—there was no question that state action had occurred. There, as here, some official of the State— an undisputed state actor—had undertaken either to attach property or

§ 1983 action against a private creditor as well as the State Attorney General.[11] Again, however, the only question before this Court was the validity of a state statute. No claim was made that the creditor was a joint actor with the State or had acted under color of law. No damages were sought from the creditor. Again, there was no occasion for this Court to consider the status under § 1983 of the private party, and there is not a word in the opinion that discusses this. As with *Sniadach, Mitchell,* and *Di-Chem, Fuentes* thus fails to establish that a private party's mere invocation of state attachment or garnishment procedures represents action under color of law—even in a case in which those procedures are subsequently held to be unconstitutional.

## B

In addition to relying on cases involving the constitutionality of state attachment and garnishment statutes, the Court advances a "joint participation" theory based on *Adickes* v. *S. H. Kress & Co.,* 398 U. S. 144 (1970). In *Adickes* the plaintiff sued a private restaurant under § 1983, alleging a *conspiracy* between the restaurant and local police to deprive her of the right to equal treatment in a place of public accommodation. *Id.,* at 152, 153. Reversing the decision below, this Court upheld the cause of action. It found that the private defendant, in "conspiring" with local police to obtain official enforcement of a state custom of racial segregation, engaged in a " 'joint activity with the State or its agents' "

---

garnish wages. For the Court, the occurrence of state action by these state officials *ipso facto* establishes that the private plaintiffs also must have been viewed as state actors. Given the presence of state action by the state officials, however, there was no need to inquire whether the private parties also were state actors. It is plain from the opinions that the Court did not do so. Nor, in cases arising in state court, was there any need to consider whether the private defendants had acted under color of law within the meaning of § 1983.

[11] *Fuentes* was consolidated with a case involving similar facts, *Epps* v. *Cortese,* 326 F. Supp. 127 (ED Pa. 1971).

and therefore acted under color of law within the meaning of § 1983. *Id.*, at 152 (quoting *United States* v. *Price,* 383 U. S., at 794).

Contrary to the suggestion of the Court, however, Justice Harlan's Court opinion in *Adickes* did not purport to define the term "under color of law." Attending closely to the facts presented, the Court observed that *"[w]hatever else may also be necessary to show that a person has acted 'under color of [a] statute' for purposes of § 1983,* . . . we think it essential that he act with the knowledge of and pursuant to that statute." 398 U. S., at 162, n. 23 (emphasis added). As indicated by this choice of language, the Court clearly seems to have contemplated some limiting principle. A citizen summoning the police to enforce the law ordinarily would not be considered to have engaged in a "conspiracy." Nor, presumably, would such a citizen be characterized as acting under color of law and thereby risking amenability to suit for constitutional violations that subsequently might occur. Surely there is nothing in *Adickes* to indicate that the Court would have found action under color of law in cases of this kind.

Although *Adickes* is distinguishable from these hypotheticals, the current case is not. The conduct in *Adickes* occurred in 1964, 10 years after *Brown* v. *Board of Education,* 347 U. S. 483 (1954), and after the decade of publicized litigation that followed in its wake. In view of the intense national focus on issues of racial discrimination, it is virtually inconceivable that a private citizen then could have acted in the innocent belief that the state law and customs involved in *Adickes* still were presumptively valid. As Justice Harlan wrote, "[f]ew principles of law are more firmly stitched into our constitutional fabric than the proposition that a State must not discriminate against a person because of his race or the race of his companions, or in any way act to compel or encourage segregation." 398 U. S., at 150–152. Construed as resting on this basis, *Adickes* establishes that a private

party acts under color of law when he conspires with state officials to secure the application of a state law so plainly unconstitutional as to enjoy no presumption of validity. In such a context, the private party *could* be characterized as hiding behind the authority of law and as engaging in "joint participation" with the State in the deprivation of constitutional rights.[12] Here, however, petitioner has alleged no conspiracy. Nor has he even alleged that respondent was invoking the aid of a law he should have known to be constitutionally invalid.[13] Finally, there is no allegation that respondent's decision to invoke legal process was in any way

---

[12] Arguing that the patent unconstitutionality of racial discrimination was irrelevant to the "conspiracy" count in *Adickes*, the Court charges that this discussion confuses the conspiracy and the substantive causes of action. *Ante*, at 932, n. 15. The Court's view is difficult to understand. In *Adickes* the private defendant allegedly conspired with the police to "deprive plaintiff of her right to enjoy equal treatment and service in a place of public accommodation," 398 U. S., at 150, n. 5, and apparently to cause her discriminatory and legally baseless arrest under a vagrancy statute. Because the vagrancy statute was not challenged as invalid on its face, the Court concludes that the "joint action" or "conspiracy" count "did not involve a state law, whether 'plainly unconstitutional' or not." *Ante*, at 932, n. 15. This conclusion is simply wrong. In the first place, the alleged "conspiracy" included an agreement to enforce a state law requiring racial segregation in restaurants. This law plainly was unconstitutional. Further, even the vagrancy statute certainly would have been unconstitutional as applied to enforce racial segregation. Presumably it was for these reasons that the Court agreed that the private defendant had "conspir[ed]" with the local police. 398 U. S., at 152. *Adickes* is entirely a different case from the one at bar.

[13] At least one scholarly commentator has stated a cautious conclusion that the Virginia attachment provisions would satisfy the standards established by this Court's recent due process decisions. See Brabham, Sniadach Through Di-Chem and Backwards: An Analysis of Virginia's Attachment and Detinue Statutes, 12 U. Rich. L. Rev. 157, 195–199 (1977). The correctness of this conclusion is not of course an issue in the present posture of the case, nor is it directly relevant to the case's proper resolution.

compelled by the law or custom of the State in which he lived. In this context *Adickes* simply is inapposite.

Today's decision therefore is as unprecedented as it is unjust.[14]

---

[14] The Court suggests that respondent may be entitled to claim good-faith immunity from this suit for civil damages. *Ante*, at 942, n. 23. This is a positive suggestion with which I agree. A holding of immunity will mitigate the ultimate cost of this litigation. It would not, however, convert the Court's holding into a just one. This case already has been in litigation for nearly five years. It will now be remanded for further proceedings. Respondent, solely because he undertook to assert rights authorized by a presumptively valid state statute, will have been subjected to the expense, distractions, and hazards of a protracted litigation.