**R. Schaeffer GREENE, Plaintiff,**

v.

**Elise McMILLAN, et al., Defendants.**

**Civ. A. No. C 80–552.**

United States District Court, N.D. Ohio, E.D.

Oct. 27, 1983.

James L. Hardiman, Shaker Heights, Ohio, for plaintiff.

Earle C. Horton, M. Umar Abdullah, Cleveland, Ohio, for defendants.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

R. Schaeffer Greene filed a complaint against his former employer, Community Action Against Addiction, Inc. ("CAAA"), alleging that his dismissal violated his constitutional rights protected by 42 U.S.C. §§ 1983, 1985, and 1986. Greene voluntarily dismissed his claims under §§ 1985 and 1986, and now defendants move for summary judgment on his § 1983 claim. For the reasons set forth below, the Motion is granted.

Jurisdiction arises under 28 U.S.C. §§ 1331, 1343.

On a motion for summary judgment, the Court must find "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Reading the evidence and the inferences drawn from it in the light most favorable to the plaintiff, *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.1979), this Court finds the material facts to be undisputed. Only questions of law need be decided.

## FACTS

CAAA, a private, not-for-profit Ohio corporation, was established in 1971. It diagnoses, treats, and counsels individuals with drug-related problems, and receives funds from the federal government's National Institute on Drug Abuse, the state Department of Mental Health and Mental Retardation, and the Cuyahoga County Mental Health and Retardation Board. CAAA's contracts with these agencies require it to submit reports, plans, and data, to undergo federal and state audits, and to obtain government approval before modifying its budget.

Greene, a black male, received a master's degree in public administration in 1971 and was hired by CAAA that November as Assistant Project Director. He supervised accounting, research and personnel employees. His annual salary was $18,000.

In June of 1975, the state conducted an evaluation of CAAA and recommended a reorganization. When CAAA heeded this advice, Greene became Associate Director of Administration and Supportive Services. Budget problems arose in 1977, prompting Dr. Joseph Mathapo, the CAAA project director, to inform Greene that his position would be eliminated. In a letter dated January 17, 1978, Mathapo offered Greene a new position with an $11,000 reduction in salary. Greene received the letter on January 17 and asked for time to respond. The same day, Mathapo informed him that he had been fired, effective immediately.

Greene's complaint alleges that the officers and directors violated § 1983 when they impaired his "implied promise and property right of continued employment in [his] position." He asserts that dismissing him with "no notice or an opportunity to be heard" while "acting individually and collectively under color of State law, was arbitrary and capricious." Complaint at 5, ¶¶ 17–21. In their Motion for Summary Judgment, the defendants argue both that Greene possessed no property interest in his job and that CAAA's dismissal of him did not constitute "state action" for purposes of § 1983.

## LAW

The Civil Rights Act of 1871, 42 U.S.C. § 1983, provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or im-

munities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The Supreme Court long ago declared, "It is state action of a particular character that is prohibited. Individual invasion of individual rights is not the subject-matter of the [fourteenth] amendment." *Civil Rights Cases*, 109 U.S. 3, 11, 27 L.Ed. 835 (1883). "That amendment erects no shield against merely private conduct, however discriminatory and wrongful." *Shelley v. Kraemer*, 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1947). Rather, "the action inhibited ... is only such action as may fairly be said to be that of the states." *Id.* Decisions by non-governmental bodies can constitute state action only when "there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974). *See Lugar v. Edmondson Oil Company, Inc.*, 457 U.S. 922, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982); *Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982). "The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State." *Jackson v. Metropolitan Edison Co., supra*, 419 U.S. at 350, 95 S.Ct. at 453. As the Sixth Circuit recently concluded:

> The required nexus must be established by showing that the State has "exercised coercive power or has provided such significant encouragement, either overt, or covert, that the choice must in law be deemed to be that of the State." ... Also a nexus may be established if the private entity has exercised powers that are "traditionally the exclusive prerogative of the State."

*Bier v. Fleming*, 717 F.2d 308 at 311 (6th Cir.1983) (citations omitted).

Greene argues that his firing by CAAA constituted state action because federal, state, and county governments funded and supervised its activities. The Supreme Court's ruling in *Rendell-Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) indicates clearly that, whatever the propriety of Greene's dismissal, it was not an action by the state of Ohio.

In that § 1983 case, a teacher challenged her dismissal by a Massachusetts private school funded almost entirely by the government and subject to extensive government regulation. The Commonwealth required the school to maintain written descriptions of jobs, personnel standards, and procedures, but imposed few specific requirements. Affirming the dismissal of the suit, the Supreme Court rejected each attempt to attribute the school's decision to the government.

First, the Court ruled that, in itself, "the school's receipt of public funds does not make the discharge decisions acts of the state.... Acts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts." 102 S.Ct. at 2771. Nor did the extensive state regulation of the school make it a state entity where "the decisions to discharge the petitioners were not compelled or even influenced by any state regulation." *Id.* at 2772. Next, since education is not an exclusive function of the state, "[t]hat a private entity performs a function which serves the public does not make its acts state action." *Id.* Finally, the Court found no "symbiotic relationship" between the school and state akin to that in *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961) (refusal of restaurant located in a public parking garage to serve blacks constituted state action), since "the school's fiscal relationship with the State is not different from that of many contractors performing services for the government." *Id.*

CAAA is a private corporation. The decision to dismiss Greene was made by its officials, who are private individuals. They were not compelled by state regulation. Treating individuals with drug problems

undeniably serves the public, but is not an exclusively state function. And no allegations of any "symbiotic relationship" have been made here. Accordingly, the present case is indistinguishable from *Rendell-Baker v. Kohn,* and summary judgment must be entered for the defendant.

IT IS SO ORDERED.