**INTERNATIONAL SOCIETY FOR KRISHNA CONSCIOUSNESS, INC., and Brian Rumbaugh, on behalf of themselves and all International Society for Krishna Consciousness, Inc., members,**

v.

**AIR CANADA, Air France, Air India, Alitalia, American Airlines, Inc., Braniff International Airways, British Airways, Delta Air Lines, Inc., Eastern Air Lines, Inc., Iberia Airlines of Spain, Icelandic Airlines, Inc., Irish International Airlines, Japan Air Lines, KLM Royal Dutch Airlines, Lan-Chile Airlines, Lufthansa German Airlines, Northwest Airlines, Inc., Ozark Airlines, Pan American World Airways, Piedmont Airlines, Republic Airlines, Inc., Sabena-Belgian World Airlines, SAS-Scandinavian Airlines, Swissair, Trans World Airlines, United Airlines, Inc., U.S. Air, Inc., and Varig Airlines, Appellants.**

No. 003, Docket 83-7415.

United States Court of Appeals, Second Circuit.

Argued Dec. 15, 1983.

Decided Jan. 31, 1984.

William H. Boice, Atlanta, Ga. (Gordon Dean Booth, Jr., Kilpatrick & Cody, Atlanta, Ga., of counsel), for Air Canada group of appellants.

Mark I. Silberblatt, Selvyn Seidel, Hale Russell & Gray, New York City, for Air India group of appellants.

David Mark Liberman, Los Angeles, Cal. (Barry A. Fisher, David Grosz, Robert C. Moest, Fisher & Moest, Los Angeles, Cal., Jeremiah S. Gutman, Eugene N. Harley, Levy, Gutman, Goldberg & Kaplan, New York City, of counsel), for appellees.

Before FEINBERG, Chief Judge, OAKES, Circuit Judge, and LEVAL, District Judge.[*]

PER CURIAM:

This is an interlocutory appeal from an order of the United States District Court for the Southern District of New York, Mary Johnson Lowe, Judge, denying defendants-appellants' motion to dismiss appellees' civil rights action for lack of subject matter jurisdiction. The thorny question presented for review was whether plaintiffs-appellees met their burden of showing that the appellant airlines' prohibition of appellees' solicitation activities in the leased areas of the three New York City vicinity airports was "under color of state law" within 28 U.S.C. § 1343(3) (Supp. V 1981) and 42 U.S.C. § 1983 (Supp. V 1981), so as to constitute "state action" within the complex of criteria elucidated and elaborated in the array of cases including *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978); *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). *See generally* 2 T. Emerson, D. Haber & N. Dorsen, *Political and Civil Rights in the United States* 407–43 (4th ed. 1979); L. Tribe, *American Constitutional Law* 1147–74 (1978).

In 1975, the International Society of Krishna Consciousness, Inc. ("ISKCON"), and Brian Rumbaugh, a Krishna devotee, filed this action pursuant to 42 U.S.C. § 1983 seeking declaratory and injunctive relief establishing ISKCON's right to engage in certain conduct[1] in the airport terminal areas of the three New York City area airports. The areas in question are leased by the defendant airlines from the Port Authority of New York and New Jersey ("the Port Authority"), the bi-state agency which in turn leases the airports from the two cities that own the sites. At the heart of appellees' suit is the contention that the airlines' conduct violated the First and Fourteenth Amendment rights of ISKCON's members. The airlines contend, among other things, that they are purely private actors, and hence cannot violate rights which are secured only against the state. The lack of state action, they argue, defeats federal subject matter jurisdiction over this case.

On July 21, 1982, Judge Lowe denied appellants' motion to dismiss the action for lack of subject matter jurisdiction. In response to the airlines' argument that permission to conduct any activity in the areas they lease is subject entirely to the control of the private tenants, i.e., the airlines, and not the state landlord, and hence that there is no state action, Judge Lowe held that (1) the leased areas "are properly deemed public fora," and that "the mere leasing of airport space to private carriers does not alter the First Amendment character of that property," questions which are not certified to us; and (2) that under *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), the Port Authority's and the airlines' "symbiotic relation" is sufficient to render the airlines' decisions state action.

While clearly not a "final decision" within 28 U.S.C. § 1291 (1976), appeal from Judge Lowe's order was taken to this court pursuant to 28 U.S.C. § 1292(b) (1976). Section 1292(b), of course, allows appellate court review of an otherwise unappealable district court order if such order, in the opinion of the district judge and the court of appeals, "involves a controlling question

---

[*] Hon. Pierre N. Leval, of the United States District Court for the Southern District of New York, sitting by designation.

[1] ISKCON contends that the activity it wishes to engage in, which is known as "sankirtan," is protected by the First Amendment. Sankirtan "requires roving devotees to approach the uninitiated, to inform them of the precepts of the religion, and to seek monetary donations." *International Society for Krishna Consciousness, Inc. v. Barber,* 650 F.2d 430, 432 (2d Cir.1981). In view of our disposition of this appeal, there is no occasion to consider either appellees' First Amendment claims or appellants' responses to those arguments.

of law as to which there is substantial ground for difference of opinion" and if "an immediate appeal from the order may materially advance the ultimate termination of the litigation. . . ."

There is no doubt that the question of the meaning and scope of "state action" presents a serious and substantial issue. The problem of divining how, where, when, and why seemingly private actors are to be held responsible as acting under color of state law, 42 U.S.C. § 1983, is critical not only to resolution of this case, but also to other litigation involving similar or analogous claims. The state action question is also basic to a thorough understanding of the role of law in the contemporary democratic state, and the delicate balance it seeks to establish between preserving an area of individual freedom by limiting the reach of federal law, *Lugar v. Edmondson Oil Co.,* 457 U.S. at 936, 102 S.Ct. at 2754, and ensuring that there is no "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law. . . ." *Id.* at 929, 102 S.Ct. at 2749, quoting *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941). As one commentator has pointed out:

> Constitutional rights define the characteristics of unconstitutional state action. To the extent that such rights impose restraints on governmental *rules* and not on governmental *actors* per se, the state action inquiry must initially focus on the task of *identifying the governmental rule implicated in a particular case,* and *not* on the task of determining *whether or not a particular actor is a governmental actor.* Indeed, the constitutional right which a litigant invokes structures the state action inquiry even more specifically:
> By defining the elements of an individual's substantive claim, a right necessarily identifies the features of a government rule which would render the rule unconstitutional. The state action inquiry, therefore, is a search not simply for a government rule, but for *a government rule possessing the forbidden characteris-*

*tics identified by the particular right the litigant invokes.*

L. Tribe, *American Constitutional Law* 1159 (emphasis in original).

Thus the complex of issues involved is often as puzzling as it is important. For this reason the Supreme Court, in a frequently quoted passage, has explained how fact-intensive each inquiry into the question of the presence of state action becomes: "Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." *Burton v. Wilmington Parking Authority,* 365 U.S. at 722, 81 S.Ct. at 860. As we put it in *Graseck v. Mauceri,* 582 F.2d 203, 204 (2d Cir.1978), *cert. denied,* 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 91 (1979), the question "whether conduct of a fundamentally private institution . . . constitutes 'state action,' [is] one of the more slippery and troublesome areas of civil rights litigation."

We are here faced with a rather general, indeed an abstract, inquiry as to whether private airlines which lease airport space from a state agency are to be deemed state actors for purposes of a section 1983 suit, irrespective of the precise content of the rule they seek to enforce and of its effect on plaintiffs and others. For the reasons suggested in this opinion, we believe that permission for this interlocutory appeal was improvidently granted, and we decline to decide the issues presented. Instead, we remand for further action of the district court. In so doing, we express neither approval nor disapproval of Judge Lowe's order, except to the extent that it has itself taken an abstract position without the searching inquiry suggested in the passage from Tribe quoted above.

In *Slade v. Shearson, Hammill & Co.,* 517 F.2d 398 (2d Cir.1974), we dismissed as improvidently granted a previously "certified" section 1292(b) interlocutory appeal. In that case, which involved the use of nonpublic information by an investment banker/securities broker, we recognized that the question presented was "intriguing" and

had "tremendous implications" for both the industry and the public. *Id.* at 399–400. Nonetheless, because there were a number of unresolved factual issues bearing on the framing and formulation of the legal questions, we noted that "to answer the legal questions presented would require an exposition sufficiently broad to cover the various factual ramifications that may occur," and we declined to provide such a sweeping statement. *Id.* at 402. In other words, what we had in *Slade* was not one legal question, "but a complexity of interlocking questions," *id.* at 403, leading us to conclude that:

> It would be the height of judicial folly, we think, to attempt on an indeterminate factual record to make an abstract exposition that would adequately cover the various contexts and reach the proper overall results, however desirable this might be for the guidance of the business or however judicially challenging such an exposition might be. It is altogether possible that some of the questions may not be reached for some time to come or may follow from previous case by case determinations. It may well be that some of the solutions to the questions asked may be reached in entirely different decision making bodies than the courts. Meanwhile, fully appreciating the importance of this court's decisions to the world of commerce, we have determined to proceed on a case to case basis and, as we have indicated above, to await in this case full findings of fact and a consequent narrowing of the issues.

*Id.*

In the present case we are similarly confronted with intriguing questions but, as was also true in *Slade,* there is a multiplicity of factual possibilities which generates a kaleidoscope of hypothetical legal issues. We note, for example, that there are at least two classes of defendants, one comprised nearly entirely of domestic carriers, the other of foreign carriers. We are told that these eight foreign airlines lease premises in the two "wing" buildings that are part of the International Arrivals Building at John F. Kennedy Airport ("JFK"), while the domestic airlines, on the other hand, maintain their own separate, freestanding terminal facilities at JFK. Apparently the classes of defendants receive different services from the lessor Port Authority. Yet despite the existence of these two distinct classes of differently situated defendants— represented by different counsel who filed their own briefs—neither the parties nor the court below explored how these factual differences might bear on the legal question of state action. Nor does the record on this appeal present a full enough portrait of the facts for us to conduct our own inquiry.

Similarly, there are three airports involved in this action, and we may take judicial notice that they are different in structure and set-up. LaGuardia has various domestic airlines adjoining each other's facilities, in some cases perhaps sharing facilities, as well as two airlines with almost separate terminals. Newark has a central terminal with annexes. In addition, each defendant presumably has entered into its own individual lease with the Port Authority, the terms of which may very well be different and the differences may or may not be significant. Concessionaires may or may not have subleases from the airlines or direct leases from the Port Authority.

Other gaps in the record render this case inappropriate for immediate appeal. We know, for example, that one airline has settled with the appellees in connection with one facility, and yet without the benefit of the precise settlement terms it is difficult to assess the present character of the airports as it bears on the appellees' state action claims. Other airlines are not parties to the action at all. Similarly, no one has been able to tell us what, if any, agreement has been reached between the Port Authority and appellees, another potentially critical fact which may have some bearing on the legal issues. Significant issues upon which the present record also is silent are the nature of the rights asserted by the plaintiffs and the justification and effect of the rules enforced by the defendants. Finally, we note that there seems to be some disagreement as to what the deci-

sion below meant. Appellants have suggested that Judge Lowe's order held the airlines to be state actors for *all* constitutional purposes, while the Judge asserts that this is too broad a reading.

Were this an appeal from a final decision, the record and judgment from the ·trial court inevitably would have narrowed the legal questions presented and provided us with more complete factual findings. In full appreciation of the importance and implications of each case which presents a state action question, we must insist on a more solid factual footing, so as not to "slip" in this critical area. *See Graseck,* 582 F.2d at 204.[2]

Case remanded; costs to neither party.

---

**2.** We note that there has been considerable delay from the time the complaint was filed until the present, for reasons that do not appear in the record. Whatever the reasons, we urge the trial judge to give this case high priority in view of the lapse of time.