787 F.2d 588
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
CLYDE ADAMS, Plaintiff-Appellee,
v.
MARY ANN VANDEMARK, EXECUTIVE DIRECTOR, AND HUMAN
DEVELOPMENT COMMISSION, A MICHIGAN NOT-FOR-PROFIT
CORPORATION, Defendants-Appellants.
 84-1258
 United States Court of Appeals, Sixth Circuit.
 3/27/86
 
 REVERSED AND REMANDED
 E.D.Mich.
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
 BEFORE: MARTIN, JONES and WELLFORD, Circuit Judges.
 PER CURIAM.
 
 
 1
 This appeal is before the panel on appellant's petition for rehearing. The petition brought to the court's attention an addition to the appellate record, see note 1 infra, and the panel has reconsidered its disposition of this case. No response to the petition from appellee was necessary. The previous opinion in this case is vacated.
 
 
 2
 Appellee Clyde Adams prevailed in his civil rights action against his former employer, Human Development Commission ('HDC'), and its Executive Director, Mary Ann Vandemark. He alleged that the termination of his employment was in violation of his First Amendment rights. The defendants appeal from the judgment for Adams entered on a jury verdict. We reverse and remand for a new trial.
 
 
 3
 The facts of the case are in some dispute but, for purposes of this decision, may be summarized as follows. Adams was hired by HDC in July of 1981 as a specifications writer after having worked for it a short time as a carpenter. HDC was working with the village of Caro, Michigan, to administer a Block Grant given by the federal government to Caro to improve housing in the village. Adams' job was to evaluate the buildings for which applications for Block Grant funds had been made.
 
 
 4
 In September 1981, HDC officials requested that Adams transfer his state builder's license to HDC so that it might seek and perform additional work under a state energy conservation project. Adams refused the request but did give HDC his license number. On November 23, 1981, Adams learned that HDC and he were named together in a publication that listed contractors eligible for work under the state project.
 
 
 5
 Adams contacted an attorney the next day, fearing that his license had been improperly used. On his attorney's advice, Adams wrote to the state licensing department to complain about HDC's action. Meanwhile, the attorney wrote to HDC demanding that they cease using the license; this letter was not received by Vandemark until December 8. The attorney apparently phoned Vandemark as well. From this phone call or otherwise, Vandemark learned of the complaint filed by Adams. She wrote a memo to the HDC Business Coordinator on December 2 informing him of Adams' conduct and suggesting disciplinary action. After consulations with the Business Coordinator and Personnel Director, and after reviewing Adams work record, Vandemark dismissed Adams on December 7, 1981.
 
 
 6
 Adams brought an action under 42 U.S.C. Sec. 1983 seeking damages from HDC and Vandemark. He claimed that he was dismissed because he filed an administrative complaint and hired an attorney. He alleged that HDC acted under color of law and that the dismissal deprived him of his right to seek redress protected by the First and Fourteenth Amendments. The jury returned a verdict for Adams awarding $85,000 damages against HDC, and $15,000 compensatory and $25,000 punitive damages against Vandemark.
 
 I.
 
 7
 The defendants argue on appeal that the jury instructions given by the court were so inadequate in certain particulars that they created 'a miscarriage of justice.'[1] Plaintiff Adams counters that, because 'defendants neither objected to the instructions at trial nor in their post trial motions,' they failed to preserve this issue for appeal. At the same time, Adams concedes in his brief, at least by inference, that a new trial may be mandated where erroneous instructions cause a 'miscarriage of justice,' even absent a timely objection or motion for new trial, citing Batesole v. Stratford, 505 F.2d 804 (6th Cir. 1974). Batesole holds that ordinarily an appellant is barred from challenging a district court's instruction in the absence of objection except 'where the error was 'obvious and prejudicial' and required action by the reviewing court 'in the interests of justice." Id. at 808 (citations omitted). This court has reviewed jury instructions and vacated jury awards despite the fact that no objection or an insufficient objection was made when the error related to an essential and major element of the case. See O'Brien v. Willys Motors, Inc., 385 F.2d 163, 166 (6th Cir. 1967); see also Katch v. Spiedel, 746 F.2d 1136, 1139 (6th Cir. 1984). This kind of review occurs only rarely, but we believe such a review is warranted in this case.
 
 
 8
 A vital aspect of this case, as in every action brought under section 1983, is whether there was 'state action' or action taken 'under color of state law' that deprived the plaintiff Adams of some claimed constitutional right. The trial court first approached this issue early in the charge when it instructed the jury as follows:
 
 
 9
 The second defendant, the Human Development Commission, may be described as one acting in the capacity of a governmental body. A governmental body, acts only through its officers, agents and employees. However, a governmental body is not liable for every action of all of its officers, agents or employees. Rather, a governmental body is liable only for those actions that can fairly be said to carry out either an official policy or decision, or an unofficially adopted custom of the governmental body.
 
 
 10
 Jury Instr. at 4. The basis for this charge is unclear. Appellant HDC is not a governmental entity, and Adams does not assert that it is. Vandemark is not a public official, and Adams does not claim she is. The complaint itself sets out that the Human Development Commission is a 'Michigan not-for-profit corporation,' and that Vandemark is that private corporation's 'Executive Director.' The court's only other references to 'state action' or 'under color of law' followed later in the charge:
 
 
 11
 In order to prove his claim, the burden is upon the plaintiff to establish, by a preponderance of the evidence in the case, the following facts:
 
 
 12
 1. That at the time of plaintiff's dismissal, the defendants acted under color of some law of the State of Michigan or an ordinance or regulation of the Village of Caro in dismissing plaintiff.
 
 
 13
 .............................................................
 
 
 14
 ...................
 
 
 15
 * * *
 
 
 16
 The first element which plaintiff must establish to prove his claim is that the defendants acted under color of law. Acts are done 'under color of . . . law' when government officials act or purport to act in the performance of their official duties.[2]
 
 
 17
 Jury Instr. at 26-27. These few words gave the jury little to guide it in making its determination on this crucial element of the claim for relief.
 
 
 18
 As stated in the complaint, the basis for Adams' allegation that defendants acted under color of law was that 'a symbiotic relationship exists' between HDC, the Federal Government and the Village of Caro, and that a 'joint relationship' came about between HDC and Caro in their administration of the federal Block Grant for housing rehabilitation. Whether a non-public entity such as HDC can be held to undertake 'state action' under either of these theories is a very difficult and complex question. To the extent a jury is to decide upon the proper factual predicates for this essentially legal determination, it must be given instructions that are clear, precise and informative as to the factors involved and the factual issues to be determined.
 
 
 19
 The cases in which the acts of private entities have been held to constitute state action or to be under color of law can be distinguished from cases in which they have not by fine shadings in the sometimes complex interrelationships that develop between the state and private bodies. Compare Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); Evans v. Newton, 382 U.S. 296 (1966); Burton v. Wilmington Parking Authority, 365 U.S. 715 (1961); with Rendell-Baker v. Kohn, 457 U.S. 830 (1982); Polk County v. Dodson, 454 U.S. 312 (1981); Flagg Brothers, Inc. v. Brooks, 436 U.S. 149 (1978); Jackson v. Metropolitan Edison Co., 419 U.S. 345 (1974). Nowhere in the jury instructions in this case has the district court refered to the multitude of factors that were considered in the cited cases. The jury was given no direction at all that could have enabled it to make the necessary underlying factual determinations. Rather, the element of 'color of law' was virtually passed over in the court's presentation of the case to the trier of fact. In a case involving private entities where the conclusion that the defendant acted under color of law is doubtful, this wholly inadequate treatment of the element was obvious and prejudicial and, we believe, has resulted in a miscarriage of justice.
 
 
 20
 We are entirely at a loss as to why counsel for the defendants made no effort to object to the jury instructions as given. Adams argues that the defendants conceded the 'color of law' issue as a trial tactic, but a review of the transcripts of final argument shows no such concession; both parties considered the issue to be quite in dispute. Indeed, the question was argued to the jury up to the moment it was effectively withdrawn by the court through deficient instructions.
 
 
 21
 Defendants are entitled to a new trial in this case. Because of our disposition on this issue we need not reach the other assertions raised on appeal. The judgment is REVERSED and the cause REMANDED for further proceedings.
 
 
 
 [1]
 The jury instructions were not in the appellate record at the time of oral argument in this appeal, and the majority of the court thus refused to consider this issue in its initial opinion. Unknown to the panel, these instructions were properly added to the record before the first opinion was issued. See Fed. R. App. P. 10(e). For this reason, the court has reconsidered the case in light of the amended record
 
 
 [2]
 There follows in the written instructions provided in the record a sentence which is lined through and apparently was not given as part of the jury charge:
 I instruct you that at all relevant times in this case, Mary Ann Vandemark, as Executive Director and the Human Development Commission were acting under color of law.
 Jury Instr. at 27. It is not clear on the record whether the court otherwise intended to or did direct a verdict for Adams on the 'color of law' issue.