**FRED MEYER, INC., a Delaware corporation, Plaintiff,**

v.

**William CASEY, Herb L. Gray, Ken Benjamin, Mike Wiley, Lon Mabon, Phillip Z. Ramsdell, No Special Rights Committee, Oregon Citizens Alliance, John Does 1 through 50, and Jane Does 1 through 50, Defendants.**

**Civ. No. 91–1320–FR.**

United States District Court, D. Oregon.

Jan. 10, 1992.

---

Charles F. Hinkle, Gregory R. Mowe, Stoel Rives Boley Jones & Grey, Portland, Or., for plaintiff.

Bruce R. McCain, Portland, Or., for defendants.

## OPINION

FRYE, District Judge:

This is a civil rights action for injunctive relief and damages brought pursuant to 42 U.S.C. § 1983 by the plaintiff, Fred Meyer, Inc. (Fred Meyer), against the defendants, William Casey, Herb L. Gray, Ken Benjamin, Mike Wiley, Lon Mabon, Phillip Z. Ramsdell, the No Special Rights Committee, and the Oregon Citizens Alliance. The matters before the court are (1) the motion of Fred Meyer for a preliminary injunction (# 2); (2) the motion of the defendants to dismiss for failure to join an indispensable party (# 10); and (3) the motion of the defendants to dismiss; in the alternative for summary judgment (# 11).

## BACKGROUND

### A. *Factual Background*

Fred Meyer is a Delaware corporation which operates approximately forty free-standing, large retail stores in the State of Oregon. The Oregon Citizens Alliance (the OCA) is a private educational foundation. The No Special Rights Committee is a political action committee. William Casey is the Multnomah County director of the OCA. Herb Gray solicits signatures for initiative petitions sponsored by the OCA and the No Special Rights Committee. Ken Benjamin is a volunteer with the Multnomah County chapter of the OCA. Mike Wiley is the membership director of the OCA. Wiley also raises funds for the OCA and the No Special Rights Committee. Lon Mabon is the chairman and founder of the OCA. Mabon is also the chairman of the No Special Rights Committee. Phillip Ramsdell is the political director of the OCA. None of the individual defendants are elected officials of the State of Oregon or employees of the State of Oregon. The OCA and the No Special Rights Committee are private entities.

The defendants are organizers and proponents of two initiative petitions. The first initiative for which the defendants are seeking signatures would amend the charter of the City of Portland to restrict the ability of the City of Portland to pass or to enforce laws related to the sexual orientation of any person. The second initiative for which the defendants are seeking signatures would amend the Oregon Constitution in a similar fashion.

Beginning on December 14, 1991, members of the OCA and the No Special Rights Committee entered upon the properties of Fred Meyer without permission from Fred Meyer to solicit the signatures of registered voters in order to qualify the two initiatives for election. Defendants Gray and Benjamin and several Doe defendants stood outside the main entrances of various Fred Meyer stores asking shoppers to sign the petitions. When the defendants start-

ed soliciting signatures, customers of Fred Meyer started complaining and threatening to boycott Fred Meyer stores and to return purchases already made for refunds. Many customers believed that Fred Meyer was sanctioning the petitions by "allowing" the defendants to remain on its properties. Fred Meyer, however, opposes the presence of the defendants on its properties and maintains a consistent policy of forbidding all persons, whatever their causes, from soliciting signatures for initiative petitions on its properties.

In the past, when persons entered the properties of Fred Meyer for the purpose of soliciting signatures for initiative petitions, Fred Meyer would ask them to leave. If they refused, Fred Meyer would call the police and have the petitioners arrested for criminal trespass. This option is no longer available to Fred Meyer following the decision by the Oregon Court of Appeals in

*State v. Cargill,* 100 Or.App. 336, 786 P.2d 208, *rev. allowed,* 310 Or. 133, 794 P.2d 794 (1990).

The facts in *Cargill* involve a criminal prosecution for trespass. Defendants were solicitors of signatures on the sidewalks outside the entrances of a Fred Meyer store in the City of Portland. After refusing to obey the directive of Fred Meyer to leave its property, the defendants were arrested and subsequently convicted of criminal trespass in the second degree. The defendants appealed their convictions to the Oregon Court of Appeals.

The Oregon Court of Appeals held that Article IV, section 1 of the Oregon Constitution [1] "prohibits using a criminal prosecution to prevent the people from collecting signatures on initiative and referendum petitions in areas that have replaced tradition-

---

1. Or. Const. art. IV, § 1 provides, in part:

**Legislative power; initiative and referendum.**

(1) The legislative power of the state, except for the initiative and referendum powers reserved to the people, is vested in a Legislative Assembly, consisting of a Senate and a House of Representatives.

(2)(a) The people reserve to themselves the initiative power, which is to propose laws and amendments to the Constitution and enact or reject them at an election independently of the Legislative Assembly.

(b) An initiative law may be proposed only by a petition signed by a number of qualified voters equal to six percent of the total number of votes cast for all candidates for Governor at the election at which a Governor was elected for a term of four years next preceding the filing of the petition.

(c) An initiative amendment to the Constitution may be proposed only by a petition signed by a number of qualified voters equal to eight percent of the total number of votes cast for all candidates for Governor at the election at which a Governor was elected for a term of four years next preceding the filing of the petition.

(d) An initiative petition shall include the full text of the proposed law or amendment to the Constitution. A proposed law or amendment to the Constitution shall embrace one subject only and matters properly connected therewith.

(e) An initiative petition shall be filed not less than four months before the election at which the proposed law or amendment to the Constitution is to be voted upon.

(3)(a) The people reserve to themselves the referendum power, which is to approve or reject at an election any Act, or part thereof, of the Legislative Assembly that does not become effective earlier than 90 days after the end of the session at which the Act is passed.

(b) A referendum on an Act or part thereof may be ordered by a petition signed by a number of qualified voters equal to four percent of the total number of votes cast for all candidates for Governor at the election at which a Governor was elected for a term of four years next preceding the filing of the petition. A referendum petition shall be filed not more than 90 days after the end of the session at which the Act is passed.

(c) A referendum on an Act may be ordered by the Legislative Assembly by law. Notwithstanding section 15b, Article V of this Constitution, bills ordering a referendum and bills on which a referendum is ordered are not subject to veto by the Governor.

. . . .

(5) The initiative and referendum powers reserved to the people by subsections (2) and (3) of this section are further reserved to the qualified voters of each municipality and district as to all local, special and municipal legislation of every character in or for their municipality or district. The manner of exercising those powers shall be provided by general laws, but cities may provide the manner of exercising those powers as to their municipal legislation. In a city, not more than 15 percent of the qualified voters may be required to propose legislation by the initiative, and not more than 10 percent of the qualified voters may be required to order a referendum on legislation.

al forums for the collection of signatures, so long as there is no substantial interference with the owner's use of the property for business or other purposes." *Id.* 100 Or.App. at 348, 786 P.2d 208. Finding that the Fred Meyer store had replaced the traditional forum for the collection of signatures, the court reversed the convictions of the defendants. The State petitioned the Oregon Supreme Court for review. On July 3, 1990, the Oregon Supreme Court granted review. *State v. Cargill*, 310 Or. 133, 794 P.2d 794 (1990). The appeal is still pending.

### B. *Procedural Background*

On December 19, 1991, Fred Meyer filed this action under 42 U.S.C. § 1983 seeking a temporary restraining order, a preliminary injunction, damages, and attorney fees. Fred Meyer argues that it has a right under the First Amendment to the United States Constitution not to be associated with the speech and ideas of the defendants. Fred Meyer further argues that the actions of the defendants amount to a "taking" of its property without just compensation as prohibited by the Fifth and Fourteenth Amendments to the United States Constitution. The court denied the motion of Fred Meyer for a temporary restraining order.

On December 20, 1991, Fred Meyer filed a complaint in the Circuit Court of the State of Oregon for the County of Multnomah seeking injunctive relief to prevent the same defendants named herein from gathering signatures on Fred Meyer properties during the holiday shopping season—Thanksgiving Day to January 3, 1992. *Fred Meyer, Inc. v. Casey*, No. 9112–08270 (Multnomah County Cir.Ct. Dec. 20, 1991). On that same day, the Honorable Donald H. Londer, Multnomah County Circuit Court Judge, granted the motion of Fred Meyer for a temporary restraining order, thereby prohibiting the defendants from gathering signatures at Fred Meyer stores through January 3, 1992.

On December 27, 1991, the defendants filed a motion in this court to dismiss Fred Meyer's complaint for the failure to join an indispensable party, and a separate motion to dismiss, or in the alternative, a motion for summary judgment. The defendants seek a ruling of this court that the complaint filed by Fred Meyer does not sufficiently allege that the defendants acted under color of state law; that the defendants have absolute legislative immunity from suit; and that Fred Meyer has failed to join an indispensable party, namely the State of Oregon.

### APPLICABLE LAW

■ Fred Meyer has brought this action under 42 U.S.C. § 1983, which provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983 requires Fred Meyer to allege and prove (1) that the defendants acted or are acting under color of the laws of the State of Oregon; and (2) that the defendants deprived Fred Meyer of a right secured by the Constitution or the laws of the United States. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 1732, 56 L.Ed.2d 185 (1978).

### ANALYSIS

In its complaint, Fred Meyer alleges that the defendants were and are acting under color of the laws of the State of Oregon because the defendants claim the right to enter the properties of Fred Meyer by virtue of the decision of the Oregon Court of Appeals in *State v. Cargill*, 100 Or.App. 336, 786 P.2d 208, *rev. allowed*, 310 Or. 133, 794 P.2d 794 (1990), and that the defendants are engaging in legislative activi-

ty authorized by Article IV, section 1 of the Oregon Constitution. Fred Meyer argues that the conduct of the defendants is chargeable to the State of Oregon pursuant to the *Cargill* decision.

■ The first question for the court to decide is whether the defendants acted or are acting under color of the laws of the State of Oregon. Since it is undisputed that the individual defendants are private citizens and the OCA and the No Special Rights Committee are private entities, the court must determine whether the actions of these private citizens and these private entities are "fairly attributable" to the State of Oregon. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982). If the actions of these private citizens and these private entities are fairly attributable to the State of Oregon, then the requirement that they acted or are acting under color of state law has been satisfied. *See id.* In *Lugar*, the Court enunciated a two-part approach for analyzing the conduct of a citizen or a private entity to determine whether the conduct of the private citizen or private entity could be fairly attributable to a State. "First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible.... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id.*

■ Under the laws of the State of Oregon, the defendants are entitled to solicit signatures on the properties of Fred Meyer under the authority of the initiative and referendum provisions of the Oregon Constitution without the fear of arrest. This is sufficient to satisfy the first part of the test set forth in *Lugar*. However, it is not sufficient, by itself, to fairly characterize the conduct of the defendants as the conduct of state actors. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) (conduct by private party pursuant to statute, without more, not sufficient to characterize party as a state actor). Thus, the court must examine part two of the *Lugar* test: whether the defendants may fairly be said to be state actors. *Lugar*, 457 U.S. at 937, 102 S.Ct. at 2753.

The defendants are not state officials or employees. They did not act with the aid of or together with state officials or employees in soliciting signatures on the properties of Fred Meyer.

The defendants were performing a function which has traditionally been a state prerogative. *See Rendell–Baker v. Kohn*, 457 U.S. 830, 842, 102 S.Ct. 2764, 2771, 73 L.Ed.2d 418 (1982). The defendants, in soliciting signatures in order to place an initiative on the ballot, are participating in the process of enacting law. The enactment of laws is a traditional state function. In the State of Oregon, however, the legislature does not have the *exclusive* power to enact laws. *See id.* (defendants may be fairly characterized as state actors if they perform "a function which has been traditionally the *exclusive* prerogative of the State." (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974)) (emphasis in *Rendell–Baker*)). Since 1902, the Oregon Constitution has reserved to the people of the State of Oregon the powers of initiating and referring to the voters of the State of Oregon proposed legislation. Although the acts of the defendants in participating in the legislative process serve a public function, such service does not transform their conduct into state action. *See id.*

### RULING

⌐ Fred Meyer has failed to show that the defendants were acting under color of state law, and, consequently, Fred Meyer has not stated a claim under 42 U.S.C. § 1983. Accordingly, the motion of the defendants to dismiss; in the alternative for summary judgment (# 11) is granted. The motion of Fred Meyer for a temporary restraining order/preliminary injunction (# 2) and the motion of the defendants to dismiss for failure to join an indispensable party (# 10) are deemed moot.