67 F.3d 1412
 95 Cal. Daily Op. Serv. 7970, 95 Daily Journal
D.A.R. 13,656
FRED MEYER, INC., a Delaware corporation, Plaintiff-Appellant,
v.
William CASEY; Herb L. Gray; Ken Benjamin; Mike Wiley;
Lon Mabon; Phillip Z. Ramsdell; No Special Rights
Committee; Oregon Citizens Alliance; John Does, 1 Through
50; Jane Does, 1 Through 50, Defendants-Appellees.
 No. 92-35067.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 5, 1993.
Decided Oct. 10, 1995.
 
 Charles F. Hinkle, Stoel, Rives, Boley, Jones & Grey, Portland, Oregon, for plaintiff-appellant.
 Bruce R. McCain, Portland, Oregon, for defendants-appellees.
 Appeal from the United States District Court for the District of Oregon.
 Before REINHARDT, BRUNETTI, and FERNANDEZ, Circuit Judges.
 Opinion by Judge BRUNETTI; Concurrence by Judge REINHARDT.
 BRUNETTI, Circuit Judge.
 
 I. INTRODUCTION
 
 1
 Appellant Fred Meyer, Inc. ("Fred Meyer") brought a 42 U.S.C. Sec. 1983 claim against appellee defendants. Fred Meyer is a Delaware corporation which operates approximately forty freestanding, large retail stores in Oregon. The defendants are organizers and proponents of two initiative petitions. The district court dismissed the action for failure to state a claim, because it found that Fred Meyer failed to show that defendants were acting under color of state law. This appeal followed. We review the district court's dismissal de novo. See Del Monte Dunes at Monterey, Ltd. v. City of Monterey, 920 F.2d 1496, 1507 (9th Cir.1990); Bergquist v. County of Cochise, 806 F.2d 1364, 1367 (9th Cir.1986). We affirm.
 
 II. FACTUAL BACKGROUND
 
 2
 Beginning on December 14, 1991, certain of defendants entered onto properties of Fred Meyer without its permission to solicit signatures of registered voters to qualify two initiatives for election. The first initiative for which the defendants sought signatures would have amended the charter of the City of Portland to restrict the ability of the City of Portland to pass or enforce laws related to the sexual orientation of any person. The second initiative for which defendants sought signatures would have amended the Oregon Constitution in a similar fashion. Several defendants stood outside the main entrances of various Fred Meyer stores asking shoppers to sign the petitions. When these defendants started soliciting signatures, customers of Fred Meyer began complaining and threatening to boycott Fred Meyer stores and to return prior purchases for refunds. Many customers believed that Fred Meyer was sanctioning the petitions by "allowing" the defendants to remain on its properties. Fred Meyer, however, opposed the presence of the defendants on its properties and has maintained a consistent policy of forbidding all persons, regardless of their cause, from soliciting signatures for initiative petitions on Fred Meyer properties.
 
 
 3
 In the past, when persons entered the properties of Fred Meyer to solicit signatures for initiative petitions, it would ask them to leave. Fred Meyer's consistent policy has been to seek civil injunctions against petitioners who refuse to leave its premises and to lobby against bills introduced in Oregon legislative sessions which create a statutory privilege to petition on private property. In addition, Fred Meyer has called the police and had petitioners arrested for criminal trespass.
 
 III. DISCUSSION
 A. 42 U.S.C. Sec. 1983
 
 4
 Fred Meyer brought this action under Sec. 1983 which provides in part:
 
 
 5
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
 
 
 6
 42 U.S.C. Sec. 1983 (1988). Under this section, Fred Meyer must allege and prove that (1) defendants acted or are acting under color of the laws of Oregon; and (2) defendants deprived Fred Meyer of a right secured by the Constitution or laws of the United States. See Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 155, 98 S.Ct. 1729, 1732-33, 56 L.Ed.2d 185 (1978).
 
 
 7
 Fred Meyer contends that defendants were and are acting under color of the laws of Oregon, since the defendants claim the right to enter the properties of Fred Meyer by virtue of the decision of the Oregon Court of Appeals in State v. Cargill, 100 Or.App. 336, 786 P.2d 208 (1990), aff'd by an equally divided court, 316 Or. 492, 851 P.2d 1141 (1993).
 
 
 8
 Fred Meyer argues that it has met the second of the Sec. 1983 requirements because defendants have violated several of its Constitutional rights. First, Fred Meyer claims that it has a Sec. 1983 claim against defendants because it has a right under the First Amendment to the United States Constitution not to be associated with the speech and ideas of defendants. Second, Fred Meyer alleges that defendants' actions amount to a "taking" of its property without just compensation as prohibited by the Fifth and Fourteenth Amendments to the United States Constitution.
 
 
 9
 Because we find that Fred Meyer failed to satisfy the first requirement that defendants are acting under color of state law, we affirm the district court's dismissal of this action. Like the district court, we need not decide whether the second requirement has been satisfied, although we note that the Supreme Court's decision in PruneYard Shopping Center v. Robins, 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980), would appear to preclude Fred Meyer's claim.
 
 B. STATE v. CARGILL
 
 10
 In Cargill, the defendants solicited signatures on sidewalks outside the entrances of a Fred Meyer store in Portland. After refusing to obey the directive of Fred Meyer to leave its property, the defendants were arrested and subsequently convicted of criminal trespass in the second degree.
 
 
 11
 The Oregon Court of Appeals reversed defendants' convictions, holding that Article IV, section 1 of the Oregon Constitution[1] "prohibits using a criminal prosecution to prevent the people from collecting signatures on initiative and referendum petitions in areas that have replaced traditional forums for the collection of signatures, so long as there is no substantial interference with the owner's use of the property for business or other purposes." Id. 786 P.2d at 215. The court stated that "[p]rosecuting defendants for criminal trespass for refusing to obey a direction [of Fred Meyer] to leave the entrance of the store under these circumstances would render inadequate the people's opportunity to function in their legislative role and would violate Article IV, section 1." Id. at 214-15. The court found that "[t]he Fred Meyer store at which defendants were arrested is a modern replacement for the town square or park. It is open to the public, and citizens are invited to come and congregate on the premises." Id. at 212. Significantly, the court concluded that Fred Meyer itself had opened its property to the public:
 
 
 12
 Fred Meyer's invitation to the public was broad and for more than just commercial activity. Its premises, by reason of the owner's invitation, became a forum for assembly by the community. Notwithstanding the company's apparent policy against allowing petitioners on its property, there is no evidence that defendants' activities substantially interfered with Fred Meyer's commercial activity, had a serious economic impact on the company or interfered with its "reasonable investment backed expectations."
 
 
 13
 Id. at 214.
 
 C. STATE ACTION
 
 14
 Fred Meyer's Sec. 1983 claim requires a showing that defendants are acting under "color of state law." The Supreme Court has stated that "conduct satisfying the state-action requirement of the Fourteenth Amendment satisfies the statutory requirement of action under color of state law." Lugar v. Edmondson Oil Co., 457 U.S. 922, 935 n. 18, 102 S.Ct. 2744, 2752 n. 18, 73 L.Ed.2d 482 (1982). In Lugar, the Court established a two-part state action test to determine if conduct that allegedly caused the deprivation of a federal right could be fairly attributable to the State. The two requirements are that:
 
 
 15
 First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor.
 
 
 16
 Id. at 937, 102 S.Ct. at 2754.
 
 
 17
 In this case, the first prong of the state action test is met, since the Oregon Constitution authorizes defendants' obtaining signatures for the initiative and referendum process. However, the defendants are not state actors, and thus the second prong is not met.
 
 
 18
 Describing this second prong, the Supreme Court has stated that an individual may be a state actor "because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." Id. Applying this test, the Court examined the following: "the extent to which the actor relies on governmental assistance and benefits; whether the actor is performing a traditional governmental function; and whether the injury caused is aggravated in a unique way by the incidents of governmental authority." Edmonson v. Leesville Concrete Co., 500 U.S. 614, 621-22, 111 S.Ct. 2077, 2083, 114 L.Ed.2d 660 (1991) (citations omitted).
 
 
 19
 In this case, the defendants are private citizens and entities, not state officials or employees. However, Fred Meyer argues that defendants are state actors because the State of Oregon, acting through its court system by virtue of Cargill, provides the defendants' sole authorization for their use of its property. Fred Meyer believes that defendants have the right to collect signatures in front of its stores only because of this "significant aid" from state officials, and it contends that the State thus requires it to provide a forum for defendants' activity.
 
 
 20
 We disagree. Cargill does not merit a finding that the defendants in this case were state actors. The Oregon courts have limited the application of Cargill. See State v. Dameron, 316 Or. 448, 853 P.2d 1285, 1289 n. 7 (1993) ("Although Cargill could be read expansively to apply to every Fred Meyer store in Oregon and, by inference, to every comparable retail store, the Court of Appeals since has made it clear that an expansive reading of Cargill was not intended."); see also Fred Meyer, Inc. v. McDonald, 112 Or.App. 321, 828 P.2d 1054 (1992), rev. den., 316 Or. 382, 852 P.2d 839 (1993). Moreover, Fred Meyer, which has opened its properties to the public, still has options to restrict petitioning in front of its stores.
 
 
 21
 Cargill leaves room for the case in which Fred Meyer could ask the State to prosecute individuals for criminal trespass if it could show substantial business interference with its property. Cargill, 786 P.2d at 215. Thus, Fred Meyer cannot assume that the State would not prosecute solicitors for criminal trespass if they substantially interfered with business.
 
 
 22
 Fred Meyer also argues that after Cargill and the subsequent case of Fred Meyer, Inc. v. McDonald, it cannot even obtain a civil injunction to prevent solicitation of signatures in front of its stores. In McDonald, the trial court held that based on Cargill, it could not issue Fred Meyer a civil injunction. See Fred Meyer, Inc. v. McDonald, No. 9003-01409 (Multnomah County Cir.Ct. May 4, 1990). However, the Oregon Court of Appeals reversed the trial court's decision in McDonald, holding that "Cargill is limited by its facts. It involved a single store at which the defendants were arrested for criminal trespass. The trial court was not bound to come to the same conclusion just because the signature gatherers were located at [Fred Meyer] stores." McDonald, 828 P.2d at 1055. Thus, Fred Meyer is incorrect to assume that Cargill precludes it from obtaining a civil injunction. In fact, Fred Meyer obtained a preliminary injunction from a state court against the defendants in this case because it showed that defendants' petitioning caused a substantial interference with business. See Fred Meyer v. Casey, No. 9112-08270, (Multnomah County Cir.Ct. Order of Preliminary Injunction January 13, 1992). The state court's issuance of the injunction shows that the courts will treat Fred Meyer stores and the specific facts of each case individually.
 
 
 23
 Other courts have also supported the issuance of civil injunctions restricting solicitation of ballot signatures, further suggesting that Cargill is limited to its facts. In Lloyd Corp., Ltd. v. Whiffen (Whiffen II), 315 Or. 500, 849 P.2d 446, 454-55 (1993) (internal quotations omitted), the Oregon Supreme Court accepted the principle that although the plaintiff could not obtain "an injunction to prohibit peaceful solicitation of signatures in the mall or on its walkways that does not substantially interfere with the commercial activity of the premises ... defendants' right to gather signatures in the common areas of [plaintiff's center] are subject to reasonable time, place, and manner restrictions." This principle allows courts to
 
 
 24
 issue an injunction imposing reasonable restrictions on any attempted possession (e.g., setting up card tables) by defendants of any part of plaintiff's premises and may also place reasonable restrictions on the time, place, and manner of seeking petition signatures in plaintiff's mall or on its walkways so as to reduce or eliminate interference and distraction, short of confining signature solicitors to the least traveled byways and to times when few people are at the [mall]. The number of petition signature-gatherers may also be limited.
 
 
 25
 Lloyd Corp., Ltd. v. Whiffen (Whiffen I), 307 Or. 674, 773 P.2d 1294, 1301 (1989). Thus, Fred Meyer is incorrect to state that it does not have any recourse to limit the actions of solicitors of ballot signatures.
 
 
 26
 On the basis of our holding, Fred Meyer's argument that the defendants, who are private actors, became state actors because they solicited signatures only with the help of state authority is without merit, and its attempt to parallel its action to such cases is unpersuasive. See Edmonson v. Leesville Concrete Co., 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991); U.S. v. DeGross, 960 F.2d 1433, 1440 (9th Cir.1992). In addition, Fred Meyer's claim that defendants are state actors because they engaged in a traditional state function fails, since legislation in Oregon is not the exclusive prerogative of the state. See Rendell-Baker v. Kohn, 457 U.S. 830, 842, 102 S.Ct. 2764, 2771-72, 73 L.Ed.2d 418 (1982).
 
 IV. CONCLUSION
 
 27
 The district court properly dismissed Fred Meyer's action. The defendants in this case are not state actors by virtue of the Oregon Court of Appeals' decision in Cargill, since Cargill is limited to its facts, allows Fred Meyer to limit solicitation of ballot signatures in front of his stores, and specifically states that Fred Meyer itself opened its properties by extending a broad invitation to the public. Oregon is not providing significant aid to the defendants; it is Fred Meyer and not the State of Oregon that created a public forum where defendants in this case solicited signatures. Fred Meyer has not alleged the requisite state action and thus has not stated a cognizable Sec. 1983 claim.
 
 
 28
 AFFIRMED.
 
 REINHARDT, Circuit Judge, concurring:
 
 29
 The question in this case is whether private individuals gathering signatures on Fred Meyer's property are state actors. I agree with the majority that they are not and, therefore, that the district court properly dismissed Fred Meyer's section 1983 claim. I do not, however, agree with the majority's confusing and misleading explanation of why the defendants are not state actors. My colleagues make the problem far more complicated than it is, rely on the wrong law, and leave the erroneous impression that our answer might be different but for the niceties of Oregon appellate court decisions.
 
 
 30
 My colleagues reach their conclusion for two overlapping and equally irrelevant reasons: first, that the right of access to certain property articulated in State v. Cargill, 100 Or.App. 336, 786 P.2d 208 (1990), aff'd by an equally divided court, 316 Or. 492, 851 P.2d 1141 (1993), has been limited by later Oregon state court cases; second, that Fred Meyer may impose reasonable time, place and manner restrictions on the activities of signature-gatherers. Rather than resting on these wholly irrelevant grounds, the first of which has the additional vice of being based on an erroneous reading of Oregon court decisions, I prefer to rely on elementary principles of law regarding the distribution of powers between the people and their government, as well as non-controversial and controlling United States Supreme Court precedent.
 
 
 31
 The whole purpose of the initiative process is to permit the people to act when their government fails to do so. In the absence of some unprecedented and peculiar state law that would transform that process into its polar opposite, citizens gathering signatures to place a measure on a ballot simply are not state actors.
 
 I.
 
 32
 I should note preliminarily that the only defendants here are the signature-gatherers and that there is no contention that in collecting signatures they were acting in conjunction with any state officials. The United States Supreme Court's decisions clearly delineate the limited situations under which a private individual may be considered a state actor. This case is indisputably not among them.
 
 
 33
 In Edmonson v. Leesville Concrete Co., the Court stated: "Although the conduct of private parties lies beyond the Constitution's scope in most instances, governmental authority may dominate an activity to such an extent that its participants may be deemed to act with the authority of the government and, as a result, be subject to constitutional restraints." 500 U.S. 614, 619, 111 S.Ct. 2077, 2082, 114 L.Ed.2d 660 (1991). In determining whether a defendant is a state actor, courts should examine: " the extent to which the actor relies on governmental assistance and benefits, whether the actor is performing a traditional governmental function, and whether the injury caused is aggravated in a unique way by the incidents of governmental authority." Id. at 622, 111 S.Ct. at 2083. Fred Meyer has no colorable argument to offer regarding the third factor, and its arguments on the first two factors fail completely in light of Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978).[1]
 
 A.
 
 34
 The first relevant question, for purposes of determining whether the defendants are state actors, is the extent to which they rely on "governmental assistance and benefits." Edmonson, 500 U.S. at 621, 111 S.Ct. at 2083. It is with respect to this question that the majority launches into its search and destroy mission through Oregon state law. That expedition is, of course, wholly unnecessary. The state has provided no governmental assistance or benefits to the defendants.
 
 
 35
 The closest analogy is found in Flagg Bros. The state statute at issue in that case permitted the defendant storage company to dispose of the plaintiffs' property. The plaintiffs argued that the defendant could be deemed state actors because, by enacting the statute, the state had "authorized and encouraged" the defendants' conduct. 436 U.S. at 164, 98 S.Ct. at 1737-38. The Court rejected the argument. It said that the state had simply "announce[d] the circumstances in which its courts will not interfere" with deprivations of property. Id. at 166, 98 S.Ct. at 1738-39. The state's declaration that it would not act was, in the Court's view, insufficient to transform the private defendants into state actors. Id. at 164-65, 98 S.Ct. at 1737-38.
 
 
 36
 As in Flagg Bros., "the crux of [Fred Meyer's] complaint is not that the State has acted, but that it has refused to act." Flagg Bros., 436 U.S. at 166, 98 S.Ct. at 1738. By refusing to prosecute the defendants as trespassers, and by limiting the circumstances in which Fred Meyer can obtain an injunction against their activities, the state has simply "decline[d] to provide a remedy for [a] private deprivation[ ] of property." Id.[2] That does not constitute state assistance and, thus, does not transform the defendants into state actors--regardless of the scope of the petition gatherers' right of access.
 
 
 37
 In fact, the Oregon court decisions granting signature-gatherers a right of access to property do not make the defendants state actors, wholly aside from any active/passive distinction set forth in Flagg Bros. A judicial declaration that citizens have the right to enter certain privately owned property in order to gather signatures for initiative petitions does not constitute the providing of "governmental assistance or benefits" to those citizens. Instead, it simply constitutes a recognition that certain rights are protected by the Oregon Constitution. A declaration of constitutional rights does not convert private individuals to whom those rights inure into state actors.
 
 B.
 
 38
 The next question is whether the defendants are exercising a traditional governmental function. While I agree with the conclusion the majority expresses in its one-sentence resolution of this issue, I think it worthwhile to offer a reasoned explanation of why they are not.
 
 
 39
 Cases falling within the traditional governmental function rationale have been narrowly and carefully defined. Flagg Bros., 436 U.S. at 156-60, 98 S.Ct. at 1734-35. In dismissing the plaintiffs' argument that the defendants were state actors, the Flagg Bros. Court explained that "very few" state functions are traditionally exclusively reserved to the state, with the primary examples being the function of conducting elections of state officials and the municipal function.[3] Id. at 157-159, 98 S.Ct. at 1733-35 (citing, inter alia, Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953) ("white primary" case), and Marsh v. Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946) ("company town" case));[4] see also Edmonson, 500 U.S. at 625-26, 111 S.Ct. at 2086 (peremptory challenges in jury selection). According to Flagg Bros., the exclusive governmental function doctrine does not reach private political activity, but only the conduct of elections. Flagg Bros., 436 U.S. at 158, 98 S.Ct. at 1735.
 
 
 40
 This case involves private political activity. The initiative power exercised by the defendants is not an exclusive state function or a state function at all. To the contrary, that power is "reserved to the people" by the Oregon Constitution. See Lloyd Corp. v. Whiffen, 315 Or. 500, 849 P.2d 446, 451-52 (1993) (quoting Or. Const., Art. IV, Sect. 1, which states that "the initiative and referendum powers," part of the legislative power, are "reserved to the people"). So too with the initiative process in the other states. See Cal. Const. Art. II, Sec. 8.
 
 
 41
 Fred Meyer plainly confuses the powers of the state with those of the people. The people act for themselves when they exercise their reserved powers, not on behalf of the state. The state acts by conducting elections, collecting taxes, and performing other governmental functions. See Ball v. James, 451 U.S. 355, 366, 101 S.Ct. 1811, 1818-19, 68 L.Ed.2d 150 (1981); Flagg Bros., 436 U.S. at 163, 98 S.Ct. at 1737. The functions performed by the people are entirely different. When a person votes in a state-conducted election, he is exercising a reserved power; he is not a state actor. When a person pays taxes to a state tax collector, he is acting as a private citizen. It is the polling official, the vote counter, and the tax collector who are the state actors. Similarly, when a person petitions the government to redress his grievances, he is indisputably not acting on behalf of the state or under color of law. So too, when a person seeks to have a measure placed on the ballot, either by collecting signatures or otherwise, he is exercising the privileges of a citizen, not acting on behalf of the state. Thus, both a proper reading of Flagg Bros. and an elementary understanding of the distribution of powers in a democratic society make clear that the defendants are in no way performing a traditional governmental function.
 
 
 42
 In short, citizens gathering signatures to place an initiative measure on the ballot are just not state actors.
 
 II.
 
 43
 Because signature-gatherers are not state actors, there is absolutely no reason for the majority's peregrination through state law in an effort to divine where and when Oregon permits individuals to go about the task of collecting signatures. How Oregon courts limit or do not limit signature-gatherers' right of access to private property is wholly irrelevant to the question before us. However, because I believe the line of Oregon cases that the majority misconstrues to be of exceptional importance, I feel compelled to point out the majority's errors.
 
 
 44
 The first reason given in the proposed opinion for rejecting Fred Meyer's claim that the defendants are state actors is that the "Oregon courts have limited the application of Cargill." Opinion at 1415. That is incorrect. Cargill is one of a series of Oregon cases staking out a right of access to private property for proponents of initiative petitions. See also Lloyd Corp., Ltd. v. Whiffen (Whiffen I), 307 Or. 674, 773 P.2d 1294 (1989); Lloyd Corp., Ltd. v. Whiffen (Whiffen II), 315 Or. 500, 849 P.2d 446, 452 (1993); State v. Dameron, 316 Or. 448, 853 P.2d 1285 (1993). Specifically at issue in Cargill was whether the state could enforce its trespass laws by prosecuting a defendant who had been gathering signatures for an initiative petition on the privately-owned sidewalk outside the main entrance of a Fred Meyer store. Cargill, 786 P.2d at 209. After emphasizing that "[t]he Fred Meyer store at which defendants were arrested is a modern replacement for the town square or park," that "Fred Meyer's invitation to the public was broad and for more than commercial activity," and that there was "no evidence that defendants' activities substantially interfered with Fred Meyer's commercial activities," the court reversed the defendants' trespassing convictions. Id. at 212, 214.
 
 
 45
 Subsequent Oregon Supreme Court cases strengthened and elaborated upon the principles enunciated in Cargill, rather than limiting the case to its facts, as the majority opinion suggests. In Whiffen II, the court ruled that, under Article VI, section 1, of the Oregon Constitution, the owner of a large shopping center may be required to allow persons to use privately-owned common areas to seek signatures on initiative petitions.[5] In doing so, it relied heavily on the California Supreme Court's decision in Robins v. Pruneyard Shopping Center, 23 Cal.3d 899, 153 Cal.Rptr. 854, 592 P.2d 341 (1979), aff'd, 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980), as well as on related constitutional decisions from other state and federal courts. E.g., Marsh v. Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946); Woodland v. Michigan Citizens Lobby, 423 Mich. 188, 378 N.W.2d 337 (1985). While concluding that "to prohibit the gathering of signatures on initiative petitions in the common areas of large shopping centers ... would 'impinge on constitutional rights' conferred on the citizens of this state" by the Oregon Constitution, the court also stated that the resulting constitutional right of access was subject to reasonable time, place, and manner restrictions. Whiffen II, 849 P.2d at 447.
 
 
 46
 The Oregon Supreme Court again faced these issues in State v. Dameron, 316 Or. 448, 853 P.2d 1285 (1993), a subsequent case procedurally equivalent to Cargill in which persons seeking petition signatures on the privately-owned sidewalks of a Fred Meyer store had been prosecuted for trespassing.[6] The court affirmed the appellate court's reversal of the defendants' convictions. Reaffirming its holding in Whiffen II that persons gathering petition signatures have a state constitutional right of access to certain privately-owned shopping centers, the court nonetheless cautioned against an overly expansive interpretation of that right. It emphasized the fact-specific nature of the inquiry into whether any given shopping center must provide access to such persons, noting that the focus of the inquiry must be on whether the shopping center is large and whether large numbers of persons gather there. Dameron, 853 P.2d at 1289 n. 7, 1292 n. 10.
 
 
 47
 The majority erroneously relies on the Oregon Court of Appeals' statement in an earlier case that "Cargill is limited by its facts." Opinion at 1415 (quoting Fred Meyer, Inc. v. McDonald, 112 Or.App. 321, 828 P.2d 1054, 1055 (1992), rev. denied, 316 Or. 382, 852 P.2d 839 (1993)). Aside from the fact that the McDonald statement is quoted out of context, McDonald was decided a year prior to the Oregon Supreme Court's definitive resolution of this issue. In Whiffen II, the court unequivocally stated: "We agree with the reasoning of the Court of Appeals in State v. Cargill." 849 P.2d at 452; see also Whiffen II, 849 P.2d at 470 (Gillette, J., dissenting) ("[c]onsistent with Cargill, defendants here also assert--and the majority agrees--that they have a [constitutional] right to gather signatures"). McDonald thus tells us little about the Oregon Supreme Court's view as to the breadth of Cargill's holding.
 
 
 48
 Although courts have cautioned against an overly expansive reading of Cargill, they have in no way narrowed its holding. What later opinions have said is that each case must be considered on its facts, i.e., that evaluating what property that initiative proponents have the right to enter requires an extremely fact-specific inquiry. Nothing in Cargill is to the contrary. Accordingly, such statements do not limit Cargill. Rather, the principles set forth in Cargill remain as strong as ever.
 
 
 49
 Moreover, even if Cargill were narrowly interpreted and only applied, for example, to a few of the largest Fred Meyer stores (there are 40 of them), this would not defeat the logic of Fred Meyer's claim, as the majority opinion suggests. Rather, it would simply serve to limit Fred Meyer's claim to those few stores. Fred Meyer asserts in its brief that because of the state court decision in Cargill, the defendants have been granted access to Fred Meyer stores generally. If, however, only certain stores are affected, then that would only mean that Fred Meyer's state action argument would fail as to the other stores. The problem with respect to the affected stores would, of course, be identical whether Cargill had been limited or not. Accordingly, concluding (erroneously or not) that Cargill has been limited to certain stores in no way brings us any nearer to the ultimate answer in this case.
 
 
 50
 Most important, the problem with the majority opinion's heavy reliance on the "limiting" of Cargill is that it implies that, given an unlimited or invigorated Cargill (or a stronger case from another jurisdiction, see, e.g., Robins v. Pruneyard, 23 Cal.3d 899, 153 Cal.Rptr. 854, 592 P.2d 341 (1979)), Fred Meyer's claim might be upheld. As explained in part I, such a conclusion would be clearly wrong, given the nature of the initiative process and the controlling Supreme Court precedent. Whether Cargill is limited or unlimited, signature-gatherers are simply not state actors.
 
 
 51
 The second reason given in support of the opinion's holding is that Fred Meyer "still has options to restrict petitioning in front of its stores." Opinion at 1415; see also opinion at 1416 ("Fred Meyer is incorrect to state that it does not have any recourse to limit the actions of solicitors of ballot signatures"). Specifically, the opinion refers to the fact that the Oregon courts have ruled that store-owners may impose reasonable time, place, and manner restrictions on the activities on signature-getters. See, e.g., Whiffen II, 849 P.2d at 454 (1993).
 
 
 52
 The time, place, and manner argument, like the number of stores argument, is not relevant to the issue of whether the defendants are state actors. It is directed instead to the substance of Fred Meyer's takings claim. The argument is that the infringement of property interests that has allegedly occurred is not as grave as Fred Meyer claims--in other words, that no violation of a constitutionally protected right has occurred. This fact, however, has nothing to do with whether the defendants are state actors. As one academic commentator has emphasized, the state action inquiry looks solely to "the extent of the challenged action's connection with the state; it does not purport to consider the extent to which the complained-of activity impairs a constitutional value in the particular case." Cole, Federal and State "State Action": The Undercritical Embrace of a Hypercriticized Doctrine, 24 Ga.L.Rev. 327, 331 (1990).
 
 
 53
 When private citizens exercise their fundamental right to seek to have an initiative measure placed on the ballot, they are private individuals and nothing more. Whether they gather signatures outside some or all of Fred Meyer's stores, and whether they do so only in the mornings or twenty-four hours a day, they are not state actors. In short, I strongly disagree both with the overall approach taken in the majority opinion and with the majority's analysis of Oregon law. The majority's interpretation of that state's decisional law not only is erroneous, but it has no relevance to the pivotal question: Whether the defendants are state actors. Because Fred Meyer has not alleged the requisite state action, it has not stated a cognizable section 1983 claim. I would affirm the dismissal on this ground.
 
 
 
 [1]
 This section of the Oregon Constitution authorizes initiative and referendum. See Or. Const. art. IV, Sec. 1
 
 
 [1]
 The third factor enumerated in Edmonson--that the injury be aggravated in a unique way by the incidents of governmental authority--is clearly inapplicable here, since no incidents of governmental authority are involved
 
 
 [2]
 Although the state rule authorizing defendants' conduct in the present case is decisional rather than statutory, the identical analysis applies. See Flagg Bros., 436 U.S. at 161 n. 10, 98 S.Ct. at 1735 n. 10 (concluding that "the mere existence of a body of property law in a State, whether decisional or statutory," was insufficient to support a finding that defendants were state actors)
 
 
 [3]
 The court also left open the possibility that such functions as education, fire and police protection, and tax collection would be found to have been administered with a sufficient degree of exclusivity to be covered by the traditional governmental function doctrine. Id. at 163 & n. 14, 98 S.Ct. at 1737 & n. 14. Tax collection appears clearly to qualify. Some of the others may be more problematic. See Rendell-Baker v. Kohn, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) (private school funded primarily by public sources and regulated by public authorities not state actor)
 
 
 [4]
 In light of Marsh and its progeny, there is considerable irony in Fred Meyer's claim that the defendants are state actors. The locus of dispute in this line of cases has always been whether the property-owner can properly be deemed a state actor. See, e.g., Whiffen II, 849 P.2d at 474 (Gillette, J., dissenting)
 
 
 [5]
 It was the second time that the Oregon Supreme Court had ruled in the same action. In Lloyd Corp., Ltd. v. Whiffen (Whiffen I), 307 Or. 674, 773 P.2d 1294 (1989)--a case relied upon by the Oregon Court of Appeals in Cargill--the court had held that persons have a "subconstitutional" right to seek signatures on shopping center property
 
 
 [6]
 On the same day that it issued the opinion in Dameron, the Supreme Court also issued its one-sentence affirmance of Cargill. See 316 Or. 492, 851 P.2d 1141 (1993)