Quentin HOLLAND, et al., Plaintiffs,

v.

George F. O'BRYANT, Jr., et al., Defendants.

Civil Action No. 96–00997.

United States District Court, District of Columbia.

March 27, 1997.

Marvin Leonard Szymkowicz, Mendelsohn & Szymkowicz, Washington, DC, Christopher Alan Hostage, Reed & Hostage, P.C., Washingtin, DC, for Plaintiffs.

Thomas L. Koger, Office of Corp. Counsel, D.C., Washington, DC, for Defendants.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This matter comes before the Court on Plaintiffs' motion for an *in camera* examination of Defendants' confidential informant and related documents. The Court has considered the motion and the opposition thereto, and heard argument on March 24, 1997.

## BACKGROUND

In early February 1996, the District of Columbia Metropolitan Police Department (the "MPD") obtained a search warrant on Plaintiffs' residence at 3973 Blaine Street, N.E. The warrant was issued on the strength of defendant Investigator George O'Bryant's affidavit identifying Plaintiffs' home as a "cut house stash"—a facility where crack cocaine is processed and stored. The O'Bryant affidavit, in turn, relied on facts provided by a "confidential source" identified as CS (the "CS") and described as a source of invariable past reliability. The affidavit claimed that the CS gained admission to Plaintiffs' residence and, while there, observed large, white rocks of crack cocaine. The affidavit also described Plaintiffs' residence as having a gray front door and silver screen door.

The affidavit of plaintiff Quentin A. Holland stated that "the information provided by the confidential source was false. I have never been involved in any way in any illegal drug activity." Holland affidavit, ¶ 4. What is more, Plaintiffs' residence did not have a silver screen door or gray front door on or about February 16, 1996. The screen door was white metal and the front door was black.

On February 16, 1996, 18 officers of the MPD executed the search warrant on Plaintiffs' residence, allegedly causing damage totaling $26,000 to Plaintiffs' residence and property. They found no contraband of any kind.[1] A WRC–TV news report concerning the search included a comment by Inspector John Daniels of the 6th District of the MPD that "we erred" and "got twisted up with another address." Holland affidavit, ¶ 8.

Plaintiffs filed this action on April 30, 1996, advancing common law tort claims and claims under 42 U.S.C. § 1983.[2] During discovery, Plaintiffs have sought information from and about the CS in order to advance their § 1983 claim and proposed an *in camera* examination by this Court. *See Washington v. District of Columbia*, 685 F.Supp. 264 (D.D.C.1988). Defendants did not agree to an *in camera* examination of the CS, claiming that any such examination would pose an unwarranted risk of exposure of the CS. Plaintiffs then filed their motion for an *in camera* examination of the CS with the Court, seeking to determine, "(a) whether the affidavit submitted in support of the warrant falsely or recklessly described the informant as consistently reliable; (b) whether a reasonably well trained police officer would have concluded there was probable cause to search plaintiff's residence; [and] (c) whether the faulty warrant was the product of bad information or defendants' unreasonable failure to specify the correct location of the search warrant." Plt. Motion for an *In Camera* Examination of the Confidential Source, p. 2.

---

1. The MPD had previously executed a search warrant at 3972 Blaine Street, N.E. on February 2, 1996 and found no drugs. On March 7, 1996, the MPD mistakenly executed a search warrant specified for 3987 Blaine Street, N.E. at 3981 Blaine Street, N.E. and did find drugs.

2. It is unclear to this Court why Plaintiffs have not pursued an action against the District of Columbia under D.C.Code § 12–309. It would seem that the facts in this case would fall full square within that provision. Perhaps Plaintiffs will enlighten the Court at their next appearance here.

## ANALYSIS

■ The purpose of 42 U.S.C. § 1983 is to provide a federal remedy for deprivations of constitutional rights by authorizing suit against local public officials and government entities. *See Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Richardson v. Oldham,* 811 F.Supp. 1186, 1192 (E.D.Tex.1992). In order to state a claim under § 1983, a plaintiff must prove three elements: (1) deprivation of a federally protected right secured by the Constitution and the laws of the United States, (2) state action taken under color of law, and (3) proximate causation. *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 930, 102 S.Ct. 2744, 2750, 73 L.Ed.2d 482 (1982) (quoting *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155–56, 98 S.Ct. 1729, 1732–33, 56 L.Ed.2d 185 (1978)).

In this case, Plaintiffs argue that they have been deprived of their Fourth Amendment rights through allegedly unlawful police conduct in the form of an unreasonable search of their residence on February 16, 1996. Their motion for an *in camera* examination is part of their effort to establish the unreasonableness of the search.[3] This Court questions whether any such burden rests with the Plaintiffs at this time. The warrant and subsequent search of Plaintiff's residence on February 16, 1996 was so clearly in error that the burden of going forward has now been shifted to the Defendants.

The facts in this case reveal a series of incidents that could almost be described as "clousseauesque." In early 1996, the government executed three different search warrants for three different houses on the 3900 block of Blaine Street, N.E. in a continuing and seemingly random search for narcotics and weapons, and achieved success only in the case of the last search which was of premises not specified in the search warrant. In effect the police were engaged in a warrantless search.

With respect to the search warrant executed on Plaintiffs' home, the warrant described 3973 Blaine Street, N.E. as possessing a "grey front door with a silver screen door." Even though plaintiffs' screen door was white metal and their front door was black, none of the eighteen officers who executed the warrant apparently took note of that discrepancy. Inspector John Daniels of the 6th District admitted that the police "erred" and "got twisted up with another address." Quentin Holland affidavit at ¶ 8. The effect of these errors has been to discredit the warrant and the basis upon which it was issued, the information allegedly provided by the CS.

Because the government has so clearly acted in error in this case, the government now bears the burden of establishing the reasonableness of its search. The government's burden will include the establishment of the bona fides and credibility of the CS. The government may well have to present evidence with respect to the CS in order to meet its burden.

## CONCLUSION

■ The Fourth Amendment guarantees to this nation's citizens are extremely important. It eloquently states:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The government cannot be allowed to break down an innocent citizen's door and invade his household looking for evidence of a crime that did not exist. It is for the government to justify the "reasonableness" of its conduct. If it fails, it must compensate those it has injured for the harm it has caused. Police

---

**3.** In particular, Plaintiffs plead that "the information provided by the 'CS' was untrustworthy, false and unreliable. The informant 'CS' stated that [s/he] was invited inside plaintiffs' house and observed what [s/he] knew to be numerous large white rocks of crack cocaine [but] despite Inv.

O'Bryant's assertions of the reliability of 'cs,' this alleged visit never took place in plaintiffs' home at 3973 Blaine Street, N.E., and in fact no evidence of drug activity was found in plaintiffs' home during the search." Amdt Cmplt, ¶ 23–4.

officers cannot break into a citizen's home, hide behind a search warrant that is concededly flawed and then attempt to deny just compensation to the citizen it has wronged. An appropriate order is attached.

### ORDER

This matter is before the Court on Plaintiffs' motion for an *in camera* examination of the Defendants' confidential source (the "CS") in the above-captioned matter. The Court has considered the motion and the opposition thereto, and heard argument on March 24, 1997. For the reasons cited in the accompanying Memorandum Opinion it is hereby

**ORDERED** that Plaintiffs' motion for an *in camera* examination of the CS is **DENIED.**